## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 26 2019, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Michael Johnson
Pendleton Correctional Facility
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Johnson, *Appellant-Petitioner,* | March 26, 2019 |
| | Court of Appeals Case No. 49A02-1708-PC-1995 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Respondent* | The Honorable Lisa F. Borges, Judge |
| | Trial Court Cause No. 49G04-1504-PC-11413 |

**Crone, Judge.**

# Case Summary

Michael Johnson, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. He asserts that the post-conviction court clearly erred in determining that he failed to demonstrate that he received the ineffective assistance of trial counsel. Concluding that he has not met his burden to prove clear error, we affirm.

# Facts and Procedural History

The underlying facts as recited by another panel of this Court on direct appeal follow:

> As of January 2013, Johnson had been in a relationship with his girlfriend, I.B., for seven years and had lived with her in Marion County, Indiana since the previous September. On January 4, 2013, Johnson and I.B. spent the day together but then separated. I.B. told Johnson she was going to go back to their home, but instead she went out and did not return home until 3:00 or 4:00 a.m. the next morning. When she returned, Johnson was asleep and I.B. got into bed.
>
> At that point, Johnson got up and "started going crazy," accusing I.B. of cheating on him with their neighbor. He called her "a nasty bitch" and began "talking shit." I.B. denied his accusations and told him that he could call the neighbor if he wanted to verify that she had not cheated on him. In response, Johnson continued to yell at I.B., including the statement: "Bitch, you're a fuckin' liar. Crack head." Then he poured a beer on her and told her to leave the house.
>
> When I.B. refused to leave, Johnson grabbed her by the hair and began punching her. Johnson punched her head more times than

she could count. I.B. told him to stop and that she had not cheated on him, but Johnson did not stop. Although I.B. "felt like [she] was about to die" and told Johnson that she was about to pass out, Johnson responded "I don't give a fuck bitch." As a result of the blows, I.B. felt "pain" and "dizziness." Johnson then threw her from one side of the bed to the other and grabbed her throat. I.B. gestured that she could not breathe, but Johnson continued to hold her by the throat with one hand and punch her with his other hand.

Johnson finally released I.B. and told her to call the people with whom she had spent the evening. He also told her that he had received a text message picture of her naked with somebody else. When I.B. asked to see the picture, though, Johnson would not show it to her. I.B. called the people as Johnson had requested, but she was not able to reach anyone. After I.B.'s attempted calls, Johnson took her phone away and did not give it back to her for the rest of the night.

Subsequently, Johnson began punching I.B. again and told her "how much he hated [her]" and how she had "destroyed his life." I.B. tried to block Johnson's punches by taking a fetal position on the floor, yet Johnson continued to punch her, causing bruises on her arms. He also punched her head and kicked her in the eye. I.B. repeatedly asked Johnson to stop, but he did not.

Next, Johnson pulled I.B. up by her hair and ripped off her clothing. He dragged her across the room and threw her down the steps, telling her: "Bitch, get the fuck out of my house." At that point, I.B. was in extreme pain, which she rated as a "ten" on a scale of one to ten. She attempted to come back up the steps, but Johnson threw her back down again and then dragged her through their kitchen, dining room, and living room. Throughout this time, Johnson continued to hit I.B. She attempted to hold onto the couch but lost her grip, and Johnson

threw her outside. I.B. was not wearing any clothes and was "freezing cold" because there was snow on the ground.

I.B. saw one of her neighbors coming down the street in a van and ran to the van to get help. She told the neighbor "Help me. Help me. He's about to kill me," and asked the neighbor to call the police. Johnson, however, came around the van and told the driver, "Man, she's just drunk." In response, the driver rolled up his window and told I.B. that he could not help her. I.B. then continued to run down the street and came across another car. She asked the people in the car for help, but Johnson said that they should "[m]ind [their] business," and they left.

Johnson grabbed I.B. and led her back inside. He told her to "[g]et [her] ass in the shower," but he had to help her into the shower because she was too injured to get in by herself. During the shower, I.B. kept blacking out and had trouble standing. Afterwards, Johnson helped her out and told her to go to bed. Once she was in bed, he told her to "turn around" because he wanted to have sex with her. I.B. said that she did not want to have sex, but Johnson told her again to turn around. I.B. did what Johnson had asked because she was "afraid" and "didn't want to get beat[en] [any] more." Johnson and I.B. had intercourse, and, afterwards, I.B. attempted to sleep but had trouble because she was in too much pain. Instead of sleeping, she kept falling in and out of consciousness like she had in the shower.

The next morning, Johnson started crying and apologized to I.B. for his actions the night before, and I.B. believed that Johnson was sorry. She and Johnson again had sex, and this time it was consensual. Later that day, they both went to pick up furniture for their house. Throughout that time, I.B. was "[i]n so much pain" and had marks and bruises on her arms, face, head, and legs. Johnson had to help her do everything.

When they returned home, I.B. told Johnson that she needed to go to the hospital. He told her to call her sister for a ride and said she should tell her sister that she had gotten robbed at a bank cashing a check. Later, I.B.'s sister picked I.B. up to take her to the hospital and noticed that I.B. was limping and had bruises around her eye and on her face. I.B.'s sister asked Johnson who had injured I.B., and he said, "Well, I wasn't here." On the way to the hospital, I.B. told her sister what had really happened. They also stopped at McDonald's, but I.B. had trouble eating because her jaw was locked.

At the hospital, I.B. met with a police officer and told him what had happened. Officers then took pictures of I.B.'s injuries, including bruises and cuts on her left eye, arms, back, hip, ankle, hands, legs, and behind her ears. They also went to I.B.'s home and arrested Johnson.

On January 9, 2013, the State charged Johnson with: (1) Class B felony criminal confinement; (2) Class B felony criminal confinement; (3) Class B felony rape; (4) Class C felony battery; (5) Class D felony intimidation; (6) Class D felony strangulation; and (7) Class A misdemeanor interfering with reporting of a crime.

*Johnson v. State*, 6 N.E.3d 491, 493-96 (Ind. Ct. App. 2014) (citations omitted) (brackets in original). Johnson waived his right to a jury trial, a bench trial was held, and the trial court found Johnson guilty as charged. The trial court sentenced Johnson to twenty years each for his class B felony criminal confinement convictions to be served concurrent to each other and concurrent to the lesser sentences imposed for the lower level felony and misdemeanor convictions. In addition, the trial court sentenced Johnson to twenty years for

the class B felony rape conviction to be served consecutive to the other sentences, for an aggregate sentence of forty years.

[3] On direct appeal, Johnson alleged that he had not knowingly, voluntarily, and intelligently waived his right to a jury trial on all of his charges, the trial court abused its discretion in denying his right to cross-examine the victim about past sexual conduct, and the State presented insufficient evidence to support his convictions for class B felony rape and class D felony intimidation. Concluding that Johnson knowingly, voluntarily, and intelligently waived his right to a jury trial on all of his charges, he waived his argument regarding his right to cross-examine the victim, and the evidence was sufficient, this Court affirmed Johnson's convictions. *Id*. at 498-501.

[4] Johnson, by counsel, filed a petition for post-conviction relief on April 8, 2015. Following a hearing, the post-conviction court entered a detailed order denying Johnson's petition. Johnson filed a motion to correct error, which the post-conviction court also denied. This appeal ensued.

## Discussion and Decision

[5] The appellate standard of review regarding post-conviction proceedings is well settled.

> Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Post-conviction proceedings do not offer a super appeal, rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction

rules. Those grounds are limited to issues that were not known at the time of the original trial or that were not available on direct appeal. Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are res judicata. Claims of ineffective assistance of counsel and juror misconduct may be proper grounds for post-conviction proceedings.

Because the defendant is appealing from the denial of post-conviction relief, he is appealing from a negative judgment and bears the burden of proof. Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is no way within the law that the court below could have reached the decision it did. We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law.

*Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citations and quotation marks omitted). We will not reweigh the evidence or judge the credibility of witnesses, and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014).

[6] Johnson was represented by appointed counsel for the first seven weeks of the pretrial period, after which Johnson hired Jonathan Gotkin ("trial counsel"), who represented Johnson for the majority of the pretrial period as well as the bench trial and sentencing. Johnson contends that trial counsel rendered

ineffective assistance by failing to properly investigate the case and communicate a plea offer.[1]   Appellant's Br. at 4.

[7]   Before addressing his contentions, we note that when evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017). "To satisfy the first prong, 'the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment.'" *Id*. (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second prong, the defendant must show prejudice. *Id*.  To demonstrate prejudice from counsel's deficient performance, a petitioner need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Middleton v. State*, 72 N.E.3d 891, 891-92 (Ind. 2017) (emphasis and citation omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

[8]   Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Hinesley*, 999 N.E.2d at 982.  When considering a claim of ineffective assistance of counsel, we strongly presume

---

[1] Johnson also argues that trial counsel rendered ineffective assistance by failing to form and articulate a theory of defense and properly question I.B. concerning witness bias and her incentives to cooperate with the State.  Essentially, these allegations present the prejudice aspect of his failure to investigate claim, so we do not address them separately.

"that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. (citation omitted). We presume that counsel performed effectively, and a defendant must offer strong and convincing evidence to overcome this presumption. *Id*.

[9] We first address Johnson's claim that trial counsel failed to investigate. Specifically, he asserts that trial counsel failed to investigate I.B.'s allegedly exculpatory medical records and the charges pending against her when she testified at his trial. Johnson asserts that but for trial counsel's deficient performance, there is a reasonable probability that he would not have been convicted of class B felony rape.

[10] While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is well settled that we should resist judging an attorney's performance with the benefit of hindsight. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). Indeed,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91. In addition, establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced. *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999). "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.*

[11] As for trial counsel's alleged failure to investigate I.B.'s medical records, Johnson asserts that they show that I.B. denied that he sexually assaulted her, and trial counsel must not have investigated the records because if he had been aware of this alleged exculpatory evidence, he would have used it at trial. The post-conviction court found that Johnson had "failed to prove that trial counsel failed to investigate or obtain the victim's medical records." Appealed Order at 14. Our review of the record shows that at the post-conviction hearing, Johnson moved to admit I.B.'s purported emergency room medical records based on her visit the day after Johnson battered her. The records were recovered from Johnson's file in the archives of the Marion County Public Defender Agency. The post-conviction court admitted the records for the sole purpose of showing that they were in the public defender's file. One of the pages in the medical records included a notation that read, "Denies sexual assault." PCR Ex. 10. Trial counsel testified that he reviewed prior counsel's file and all the discovery the State provided. PCR Tr. Vol. 2 at 18, 55. Although trial counsel did not specifically recall reviewing I.B.'s medical records due to the passage of time, he testified, "I review all discovery that I

have. I don't piecemeal it. Whatever it takes to acquit my client, I would have reviewed." *Id*. at 55.

[12] Johnson's assertion that trial counsel failed to investigate the records is based solely on his assumption that, had trial counsel been aware of the medical records, he would have introduced them and cross-examined I.B. regarding her alleged denial. His assumption is pure speculation. Under the circumstances, it is plausible that trial counsel decided not to pursue this evidence at trial as part of his trial strategy. I.B.'s initial statement to the police, as revealed in the probable cause affidavit supporting Johnson's arrest, was that after Johnson forced her to shower,

> Johnson then put on a condom and positioned her on the bed on her knees with her backside to him and he vaginally penetrated her with his penis. [I.B.] stated that as he was penetrating her that she kept falling over and that he had to hold her up with his hands around her waist. She stated that she did not want to have sex but she was unable to say no nor resist due to her state of weakness and faint consciousness.

Direct Appeal App. at 31. If, in fact, I.B. subsequently denied that Johnson sexually assaulted her, trial counsel was unable to question her about it before trial because I.B. failed to appear at multiple planned taped statements. PCR Tr. Vol. 2 at 24-25. Therefore, trial counsel may have decided to avoid questioning I.B about her alleged recantation because he did not know how she would answer such questions and whether her answers would be damaging to the defense. We conclude that Johnson has not met his burden to show that the

post-conviction court clearly erred in determining that he failed to demonstrate that trial counsel provided ineffective assistance by failing to investigate I.B.'s medical records.

[13] As for trial counsel's alleged failure to investigate the charges pending against I.B., Johnson asserts that the pending charges provided I.B. with an incentive to cooperate with the State, and if trial counsel had known about them, he could have used this information to impeach I.B. The record shows that after Johnson's arrest but before his trial, I.B. was charged with dealing in cocaine and possession of cocaine, and these charges were still pending when I.B. testified at Johnson's trial. The post-conviction court found,

> [T]here is simply no evidence that I.B. was given any type of special deal in exchange for her testimony at Johnson's trial; thus any investigation which [trial counsel] either did or did not do would not have uncovered a motive for fabrication and would not have improved the outcome of the trial for Johnson. With no prejudice, this claim … fails.

Appealed Order at 14.

[14] Johnson does not direct us to any evidence in the record showing that I.B. had been offered or received any benefit from the State in exchange for testifying against him. Accordingly, any cross-examination of I.B. regarding the pending charges would have been of minimal impeachment value. We conclude that Johnson has not met his burden to show that the post-conviction court clearly erred in determining that he failed to show prejudice from trial counsel's alleged failure to investigate I.B.'s pending charges.

[15] Johnson also maintains that trial counsel received a plea offer from the State but failed to communicate the offer to Johnson, and that if trial counsel had communicated the plea offer "Johnson undoubtedly would have excepted [sic] that plea."[2] Appellant's Br. at 13. As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). However, the defendant must still show prejudice as a result of this breach of duty.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id*. In *Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015), another panel of this Court held that the defendant satisfied the prejudice prong under *Strickland*,

---

[2] Apparently, the terms of the plea offer included Johnson pleading guilty to class B felony criminal confinement and class C felony battery with open sentencing of six to twenty years for the class B felony and two to eight years for the class C felony. PCR Tr. Vol. 2 at 36.

where he testified that he would have accepted the plea offer and the offer would have resulted in a maximum twenty-year sentence as opposed to the forty-five-year sentence that was imposed.

[16] Here, the post-conviction court found that trial counsel's "post-conviction testimony is clear that he conveyed all plea offers to his client" and that Johnson "also presented no testimony or evidence to show any reasonable probability that he would have accepted any of the State's plea offers, thus there is no prejudice here either." Appealed Order at 15. Johnson's bald assertion on appeal that he would have "undoubtedly" accepted the plea offer is inadequate to meet his burden to show that the post-conviction court clearly erred in finding that he failed to demonstrate prejudice.

[17] In sum, Johnson has not met his burden to show that the post-conviction court clearly erred in determining that he failed to demonstrate that he received ineffective assistance of trial counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

[18] Affirmed.

Vaidik, C.J., and Mathias, J., concur.