# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2019, 6:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Donald C. Swanson, Jr.
Joshua C. Friend
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Allen Lee Calligan,

*Appellant-Calligan,*

v.

State of Indiana,

*Appellee-Respondent*

May 16, 2019

Court of Appeals Case No.
19A-PC-119

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1312-PC-198

**Crone, Judge.**

# Case Summary

[1] A jury convicted Allen Lee Calligan of unlawful possession of a firearm by a serious violent felon ("SVF") and found him to be a habitual offender. He unsuccessfully challenged his fifty-year aggregate sentence on direct appeal. He subsequently filed a petition for post-conviction relief ("PCR"), claiming ineffective assistance of counsel, and now appeals the post-conviction court's denial of his petition. Finding that Calligan has failed to meet his burden of establishing ineffective assistance of counsel, we affirm.

# Facts and Procedural History

[2] The underlying facts as summarized in an unpublished memorandum decision on Calligan's direct appeal are as follows:

> Immediately after Officer Eric Thompson initiated a traffic stop and the vehicle he stopped pulled over to the side of the road, Calligan exited the passenger side of the vehicle, Officer Thompson ordered him back into the vehicle, and Calligan took off on foot. While chasing Calligan, Officer Thompson heard a thud and a metallic clink, and as he rounded a corner he observed Calligan getting up off the ground and holding a gun. Officer Thompson lost track of Calligan and called for backup. Approximately fifteen to twenty feet from where Officer Thompson last saw Calligan, police discovered a semiautomatic handgun lying on the ground. Calligan was eventually found nearby in a trash dumpster.

*Calligan v. State*, No. 02A05-1203-CR-143, 2012 WL 5193227 at *1 (Ind. Ct. App. Oct. 22, 2012).

[3] The State charged Calligan with class B felony unlawful possession of a firearm by an SVF and with being a habitual offender. A jury found Calligan guilty on the SVF count but was unable to reach a verdict on the habitual offender count. While Calligan was housed at the county jail, his trial counsel ("Counsel") sent him a letter at the jail stating, "The prosecutor has suggested he would agree to cap your exposure at 10 years on the habitual enhancement if you would agree to admit to that status rather than have a trial on that narrow issue. Let me know if that interests you." Petitioner's Ex. 1. The envelope, which was addressed to Calligan at the jail, was subsequently marked with a postal stamp that read, "RETURN TO SENDER/ATTEMPTED – NOT KNOWN/UNABLE TO FORWARD." Appellant's App. Vol. 2 at 28. Shortly thereafter, Counsel withdrew his appearance, and Calligan's case was turned over to the public defender. Calligan was subsequently retried and found to be a habitual offender. The trial court sentenced him to twenty years for the SVF conviction, plus a thirty-year term on the habitual offender count. Another panel of this Court affirmed his sentence on direct appeal, and our supreme court denied his petition for transfer.

[4] Later, when he was researching his file from the public defender's office to determine whether he might file a PCR petition, Calligan found Counsel's returned letter in the file. He filed a pro se PCR petition, which was later amended when he obtained counsel. In his petition, he raised several allegations of ineffective assistance of trial and appellate counsel. With respect to Counsel, the allegations included a claim of ineffective assistance in failing to

communicate a plea offer from the State. At the PCR hearing, Counsel testified that it is his practice to communicate all plea offers to criminal defendants. He testified that he did not recall having ever received a formal plea offer from the prosecutor in this case and that he had no recollection of having received from the jail the letter that was returned as undeliverable. The post-conviction court issued an order with findings of fact and conclusions of law denying Calligan's PCR petition. In its findings and conclusions, the court applied contract principles and concluded that there was no evidence of a formal plea offer and that Counsel's letter merely indicated the State's willingness to negotiate. The court also found that Counsel made a reasonable effort to communicate this information to Calligan.

[5] Calligan now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[6] Calligan contends that the post-conviction court erred in denying his PCR petition. Post-conviction relief does not offer the petitioner a super appeal; rather, subsequent collateral challenges must be based on grounds enumerated in the post-conviction rules. *McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013), *trans. denied* (2014). These rules limit the scope of relief to issues unknown or unavailable to the petitioner on direct appeal. *Id.* The petitioner in a PCR proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or

deny relief, the post-conviction court must make findings of fact and conclusions of law on all issues presented, whether or not a hearing is held. Ind. Post-Conviction Rule 1(6).

[7] A petitioner who appeals the denial of his post-conviction petition faces a rigorous standard of review, that of demonstrating that the post-conviction court's decision was clearly erroneous. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). Clear error occurs when we are left with a definite and firm conviction that a mistake has been made. *Passwater*, 989 N.E.2d at 770. In other words, if a post-conviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253. In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *McKnight*, 1 N.E.3d at 199.

[8] Calligan maintains that he was denied his constitutional right to effective assistance of trial counsel. To prevail on an ineffective assistance claim, he must satisfy two components: he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts

that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley v. State*, 999 N.E.2d 975, 983 (Ind. Ct. App. 2013), *trans. denied* (2014).

[9] Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater*, 989 N.E.2d at 770. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied*. "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011).

[10] In this appeal, Calligan limits his ineffective assistance argument to a single allegation: that Counsel failed to communicate an alleged plea offer from the State capping his habitual offender sentence at ten years. He relies on the United States Supreme Court's holding in *Missouri v. Frye,* that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to

the accused." 566 U.S. 134, 145 (2012). In *Frye*, "defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it [and thus] did not render the effective assistance the Constitution requires." *Id*. Calligan also relies on *Woods v. State*, where another panel of this Court reversed a PCR petitioner's conviction on grounds of ineffective assistance of counsel due to noncommunication of a plea offer. 48 N.E.3d 374, 380-81 (Ind. Ct. App. 2015). In *Woods*, defense counsel received a letter from the prosecutor that included a plea offer with clear terms that were favorable to the Woods, but counsel did not communicate the offer to Woods by the stated expiration date. *Id*. For reasons discussed below, we find these cases distinguishable.

[11] Here, the post-conviction court applied contract principles and concluded that Calligan had failed to demonstrate the existence of a formal plea offer. Calligan asserts that contract principles do not apply. We disagree. "Our courts have long held that plea agreements are in the nature of contracts." *Valenzuela v. State*, 898 N.E.2d 480, 482 (Ind. Ct. App. 2008), *trans. denied* (2009).

> A plea agreement is contractual in nature, binding the defendant, the state, and the trial court. The prosecutor and the defendant are the contracting parties, and the trial court's role with respect to their agreement is described by statute: If the court accepts the plea agreement, it shall be bound by its terms.

*Id*. (quoting *Lee v. State*, 816 N.E.2d 35, 38 (Ind. 2004)).

[12] The requirements of a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Conwell v. Gray Loon Outdoor*

*Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-13 (Ind. 2009). To be valid and enforceable, a contract must be reasonably definite and certain. *Id*. at 813.

> It is often difficult to draw an exact line between offers and negotiations preliminary thereto. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." But "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."

*Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (citations omitted).

[13] When it comes to plea agreements, our legislature has codified the requirement that they be in writing in felony cases. *See* Ind. Code § 35-35-3-3(a) ("No plea agreement may be made by the prosecuting attorney to a court on a felony charge except: (1) in writing; and (2) before the defendant enters a plea of guilty.").[1] Here, the only written reference to a potential plea offer is Counsel's letter to Calligan indicating that the State suggested an openness to negotiating his sentence on the habitual offender count. *See* Petitioner's Ex. 1 (Counsel's letter to Calligan stating, "The prosecutor has suggested he would agree to cap your exposure at 10 years on the habitual enhancement if you would agree to

---

[1] Although the statute specifically imposes a writing rule for plea agreements on felony charges and specifically excepts from the writing requirement plea agreements on misdemeanor charges, it is silent as to plea agreements on habitual offender counts.

admit to that status rather than have a trial on that narrow issue. Let me know if that interests you."). The letter did not indicate that the State had made a formal offer to which Calligan could bind it by assenting within a certain time. Rather, the letter is, at most, a notice from Counsel that the prosecutor was willing to negotiate a deal that would avoid a retrial on the habitual offender count. Counsel testified that he did not recall having ever received a formal plea offer for Calligan, and Calligan has failed to demonstrate that such an offer ever existed. Thus, Counsel cannot be deemed ineffective on the grounds present in *Frye* or *Woods*, where defense counsel failed to communicate a written offer from the State with clear terms favorable to the defendant.

[14] Even so, we conclude, as did the post-conviction court, that Counsel "did make a reasonable effort to communicate the prosecutor's unwritten suggestion to [Calligan] by mailing the letter reporting that suggestion to him at the Allen County Confinement Facility (where he was known to reside) … and no evidence suggests that [Counsel] knew or should have known his effort had not succeeded." Appealed Order at 7. Counsel described the mail-sorting procedures at his law office and testified that he never received the returned letter and had no reason to believe that it had not been received by Calligan. He withdrew from the case shortly after sending the letter, and the public defender's office entered its appearance. No evidence was presented as to how the letter ultimately ended up in the public defender's file. In short, Calligan failed to establish that Counsel performed deficiently concerning the communication of a potential plea deal. As he has failed to meet his burden

regarding the performance prong, we need not discuss the prejudice prong. *Baer*, 942 N.E.2d at 91.

[15] In sum, Calligan has failed to overcome the presumption that Counsel provided effective assistance. As such, he has failed to meet his burden of demonstrating clear error in the post-conviction court's denial of his PCR petition. Consequently, we affirm.

[16] Affirmed.

Bradford, J., and Tavitas, J., concur.