ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Vickie Yaser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derrell Woods,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | December 29, 2015<br><br>Court of Appeals Case No.<br>20A03-1506-PC-688<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Terry C. Shewmaker, Judge<br><br>Trial Court Cause No.<br>20C01-1212-PC-117 |



**Najam, Judge.**

## Statement of the Case

[1] Derrell Woods appeals the post-conviction court's denial of his amended petition for post-conviction relief. Woods presents a single dispositive issue for our review, namely, whether the post-conviction court erred when it concluded that Woods was not denied the effective assistance of trial counsel. We reverse.

# Facts and Procedural History

[2]     We summarized the facts and procedural history of this case in Woods' direct appeal, *Woods v. State*, No. 20A04-0401-CR-46, slip op. at 2-3 (Ind. Ct. App. November 12, 2004), as follows:

> On April 15, 2003, Gail Williams and her husband, Frank, went to Walgreens in Elkhart, Indiana, to purchase prescription medication for Gail's mother. After exiting the store, Frank placed their purchases in the car while Gail stood on the sidewalk. Brandon Robinson and Woods, who had been standing out of view on the side of the Walgreens building, approached Gail from behind. Robinson pushed Gail down while Woods grabbed Gail's purse from her arm. Both men then took off running. Gail fell to the ground after being pushed and broke her left leg. She also had bruises on her left arm where Woods had struggled with her when he grabbed her purse. Subsequently, Gail's leg was placed in a splint, and she received medication for the pain. On April 30, 2003, Gail's orthopedist replaced the leg splint with a cast, which she wore for over four weeks. Gail continued taking medication for the pain. After Gail's cast was removed, she used a wheelchair until she learned through physical therapy how to walk again. Approximately eight months after the robbery, Gail still experienced pain and had difficulty walking.
>
> The State charged Woods with robbery resulting in serious bodily injury, a Class A felony.[1] After a bench trial, the trial court convicted Woods as charged and sentenced him to forty-five years in the Indiana Department of Correction, ten years of which were suspended.

---

[1] Woods was fifteen-years-old at the time of the offense, but he was waived into adult court.

Woods raised four issues on direct appeal, including the sufficiency of the evidence and the appropriateness of his sentence. We affirmed his conviction and sentence. *Id.*

[3] On December 19, 2012, Woods filed a *pro se* petition for post-conviction relief, and he filed an amended petition, by counsel, on September 11, 2013. In his amended petition, Woods alleged that his trial counsel was ineffective when he: failed to introduce certain mitigating evidence at sentencing; and failed to communicate to Woods a guilty plea offer prior to trial. Following a hearing, the post-conviction court denied Woods' petition. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

[4] Woods appeals the post-conviction court's denial of his amended petition for post-conviction relief. Our standard of review is clear:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. *See* Ind. Post-Conviction Rule 1(5); *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake*, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is res judicata. *Id.*

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Hall v. State*,

849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.*

*Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*.

[5] Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "Although we do not defer to the post-conviction court's legal conclusions, '[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made.'" *Overstreet v. State*, 877 N.E.2d 144, 151 (Ind. 2007) (citation omitted).

[6] Woods contends that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution. A claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the

defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

### *Deficient Performance*

[7] Woods contends that his trial counsel's performance was deficient in two respects. However, because we find one of Woods' allegations dispositive on appeal, we need only address whether his trial counsel was ineffective when he did not communicate to Woods a guilty plea offer from the State. In particular, Woods presented evidence to the post-conviction court, without objection, that, on June 23, 2003,[2] John Maciejczyk, the prosecutor, sent a signed and dated letter, on official letterhead, to R. Brent Zook, Woods' defense counsel, proposing the following plea:[3]

> 1.   In 03FA100,[4] the Defendant will plead guilty to Count I, Robbery, as a Class B Felony.
> 2.   In 03FB090 [sic], the Defendant will plead guilty to Count II, Auto Theft, a Class D Felony and Count III, Possession of Cocaine, a Class D Felony.

---

[2] Woods was arrested on April 25, 2003, and he immediately confessed to stealing the victim's purse and cooperated with police.

[3] In addition to the Class A felony robbery charge in Cause No. 20C01-0305-FA-90, Woods was facing charges in Cause No. 20C01-0305-FB-100 for carjacking, a Class B felony; auto theft, as a Class D felony; and possession of cocaine, as a Class D felony.

[4] The parties agree that there was no cause number ending in "FA-100" involving Woods and that this must have been a typographical error. The only A felony charge Woods was facing at the time was the one in Cause Number 20C01-0305-FA-90 for the robbery of Gail Williams.

3.    In 03FB090 [sic], the the [sic] state will dismiss Count I, Carjacking, a Class B felony.

4.    The Court will otherwise be free to impose whatever sentence it deems appropriate.

If not accepted, this plea offer will expire this Thursday.[5]  I enclose the discovery for 03FB100, which appears to not have been provided earlier.

Pet. Ex. 11.  Woods also presented evidence that Zook received that letter on June 25, 2003.

[8]    Woods testified at the hearing on his petition for post-conviction relief that Zook never communicated that plea offer to him and that, if he had, Woods would have accepted the offer.  Woods testified further that, sometime after June 2003, Zook communicated an offer to have Woods plead guilty to the A felony robbery with sentencing left to the trial court's discretion.  Zook recommended to Woods that he reject that offer, which Woods did.

[9]    Zook was deceased at the time of Woods' post-conviction hearing.  In lieu of Zook's testimony, Woods called Clifford Williams, the Chief Public Defender for Elkhart County, who had worked with Zook and who had reviewed Zook's file regarding Woods' defense in cause numbers FA-90 and FB-100.  In support of his contention that the June 23, 2003, plea offer had been made by the State but not communicated to Woods, Woods submitted into evidence a document

---

[5]  June 23, 2003, was a Monday, so "this Thursday" referred to Thursday, June 26, 2003.

entitled "Motion to Withdraw Plea of Not Guilty and Enter Plea of Guilty and Plea Agreement and Disclosure." Pet. Ex. 8. That motion contained the same terms of the plea offer issued by Maciejczyk on June 23, 2003, but it is neither signed nor dated. Williams testified that such a document "would have been prepared by [the public defender's office] as a result of the plea offer which was extended in the letter" of June 23, 2003. Tr. at 139. Maciejczyk did not testify at the post-conviction hearing, but he submitted an affidavit stating that he did not have any recollection of plea negotiations in Woods' case.

[10] Williams also testified, without objection by the State, that Zook had made handwritten notes on a copy of the June 23, 2003, offer letter. In particular, the words "30 cap" were written and crossed out, and the words "no cap" were written next to that notation. Pet. Ex. 6. The "B" in "Class B Felony" was crossed out in the first paragraph of the offer letter, and the letter "A" was written above it. *Id.* And there were some notations at the bottom of the offer letter that are hard to discern. Williams testified that those notations likely reflected plea negotiations between Zook and Maciejczyk. Finally, Williams attempted to testify regarding what Zook may have indicated in other handwritten notes on the exterior of a file folder maintained in Woods' case, but the State objected to that testimony, and the post-conviction court sustained the objection.

[11] In its findings and conclusions, the post-conviction court stated in relevant part as follows:

41. Petitioner further argues that his attorney was ineffective during plea negotiations for failing to communicate a favorable plea offer that Petitioner would have accepted. Petitioner contends that there was an offer from the State that would have allowed him to plead guilty to Robbery as a Class B felony and two Class D felonies with dismissal of the carjacking count. Rather, the only plea offer he ever saw required him to plead guilty to a Class A felony, and he rejected this offer after consulting with his family and counsel.

42. As previously noted, Petitioner's counsel is now deceased. Mr. Williams, Chief Public Defender, brought all files pertaining to Petitioner from his office to the post[-]conviction hearing, and [he] testified that it appeared from the file in the instant case that ongoing plea negotiations were reflected. *He noted a document on which was written what he presumed to be an offer; however, it was not ascertainable from where the document originated.* There were several scribbles and writings on the document, including a notation "Deft plead to Robbery A,["] "B felony" was lined out, and "30 cap" scribbled out and then "no cap" written in. Essentially, Mr. Williams was able to say from looking at the notes in the file that Mr. Zook was involved in negotiating a plea with the State, but could not testify about the details of that process. *Mr. Williams stated that it was uncertain if the document was prepared by the Public Defender's Office or the State*, and the document did not establish whether or not it was presented to Petitioner or if so, at what stage. There was a note in the file in what Mr. Williams believed to be Mr. Zook's handwriting that Mr. Zook planned to see Petitioner, but beyond that, Mr. Williams said that it was not possible with any degree of certainty to say what the entries meant or who prepared the documents.

43. *Mr. Williams' testimony establishes that the document relied upon by Petitioner in support of his contention that his counsel failed to produce an acceptable plea offer to him is non-discernible hearsay. No other evidence in this regard was presented but for Petitioner's self-serving statement that he would have pled to a more favorable offer had it been*

*presented*. Accordingly, the court cannot draw the conclusion based on the evidence before it that Petitioner's counsel was ineffective in his representation of Petitioner with respect to any plea negotiations in this case.

Appellant's App. at 147-48 (emphases added).

[12] On appeal, Woods first contends, and we agree, that the evidence does not support the post-conviction court's findings with respect to the June 23, 2003, plea offer letter. The post-conviction court found that "it was not ascertainable from where the document originated" and that the offer letter was "non-discernible hearsay." *Id.* While some of the handwritten notations on Zook's copy of the offer letter, submitted as Petitioner's Exhibit 6, are "non-discernible," the original type-written letter on official letterhead, signed by Maciejczyk, and dated June 23, 2003, and admitted separately as Petitioner's Exhibit 11, is clean and represents an offer by the State to dismiss the Class A felony robbery charge and the carjacking charge in exchange for Woods' plea to Class B felony robbery, Class D felony auto theft, and Class D felony possession of cocaine, with sentencing left to the trial court's discretion. Indeed, in preparation for the post-conviction hearing, Woods obtained a copy of the letter submitted as Petitioner's Exhibit 11 from the State, and the post-conviction court admitted that exhibit without objection at the hearing on Woods' post-conviction petition. Moreover, Zook's office had received the letter, as indicated by a file-stamped copy that reads "Received June 25, 2003." Pet. Ex. 6.

[13]  We hold that the evidence does not support the post-conviction court's findings that the origin of the June 23, 2003, plea offer letter is not ascertainable and that the letter consists wholly of "non-discernible hearsay." To the contrary, there was no dispute at the hearing that the letter was prepared by Maciejczyk, signed and dated, and transmitted to Zook, whose office received the letter two days later. Neither was there any dispute that the letter contained a plea offer with clear terms.[6] We agree with the post-conviction court that the handwritten notations on Petitioner's Exhibit 6 are non-discernible hearsay. But the same letter without notations admitted as Petitioner's Exhibit 11 does not suffer from any such infirmity and was obviously prepared by Maciejczyk, as indicated by the letterhead and his signature.

[14]  Second, in paragraph 42 of the court's findings and conclusions, the court notes that "Mr. Williams stated that it was uncertain if *the document* was prepared by the Public Defender's Office or the State." Appellant's App. at 148 (emphasis added). In the sentences leading up to that sentence in paragraph 42, when the trial court refers to "several scribbles and writings on the document," the court is clearly referring to Exhibit 6, the copy of the plea offer letter with Zook's handwritten notes. While Williams initially testified that he was not sure whether his office or the prosecutor's office had prepared the motion to

---

[6] Again, there were typographical errors with respect to the cause numbers, but those errors were not substantive.

withdraw guilty plea (Exhibit 8),[7] Williams gave no such testimony with respect to the plea offer letter containing Zook's handwritten notes (Exhibit 6) or, for that matter, the clean copy of the plea offer letter (Exhibit 11). Rather, Williams testified that the plea offer letter admitted as Exhibit 6 "is a document that originated from the prosecuting attorney's office June 23, 2003[.]" Tr. at 129. Thus, the post-conviction court's finding that Williams could not be certain whether the plea offer letter was prepared by the Public Defender's office or the State is not supported by the evidence.[8]

[15] Accordingly, there can be no dispute that the State offered Woods' attorney a plea deal for Woods to plead guilty to a lesser charge, and the trial court's findings and conclusion to the contrary are clear error. *See Overstreet*, 877 N.E.2d at 151. In *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012), the United States Supreme Court squarely addressed the issue presented in this case and held as follows:

> This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to

---

[7] Williams ultimately testified that his office would likely have prepared the document submitted as Exhibit 8.

[8] The dissent points out that, on cross-examination, Williams testified that he "can't definitively say" whether the hand-written modification of paragraph 1 of the plea offer in Exhibit 6 from Class B Felony to Class A felony was made by Zook during negotiations or by Maciejczyk before Zook received it. Tr. at 167. While that is true, it is also irrelevant because both the trial court and the majority have disregarded Exhibit 6 as containing non-discernible hearsay. Rather, it is undisputed that Exhibit 11 is a signed and dated copy of the plea offer letter that was found in Maciejczyk's file and contained no handwritten notations. That document speaks for itself, and whether subsequent negotiations resulted in handwritten notations on the letter by Zook and/or Maciejczyk has no bearing on whether the original offer, as indicated in Exhibit 11, was extended to Zook.

accept a plea on terms and conditions that may be favorable to
the accused. Any exceptions to that rule need not be explored
here, for the offer was a formal one with a fixed expiration date.
When defense counsel allowed the offer to expire without
advising the defendant or allowing him to consider it, defense
counsel did not render the effective assistance the Constitution
requires.

Here, Maciejczyk made a formal plea offer with a fixed expiration date, and the terms of the plea offer were favorable to Woods. Because the undisputed evidence shows that Zook did not communicate the June 23, 2003, offer to Woods, his performance was deficient.

### *Prejudice*

[16] Having shown that Zook's performance was deficient, Woods must demonstrate that he was prejudiced by Zook's failure to communicate the plea offer to him. Woods maintains that, had Zook told him about the June 23, 2003, plea offer, he would have accepted it. That plea offer left sentencing to the trial court's discretion, and Woods would have faced a maximum sentence of twenty years for the Class B felony in FA-90. Because Woods went on to be convicted of Class A felony robbery at a bench trial and the court sentenced him to forty-five years, Woods maintains that the prejudice to him here is obvious. Further, the undisputed facts show that Woods never denied having participated in the robbery and that his trial strategy was to admit to the Class B felony robbery, both of which are consistent with his testimony that he would have accepted the plea offer if he had known about it.

[17] In support of his contention, Woods cites *Dew v. State*, 843 N.E.2d 556, 571 (Ind. Ct. App. 2006), *trans. denied*, where this court held that a defendant satisfies the prejudice prong of *Strickland* if he shows that, that, but for counsel's actions, there was a reasonable probability that he would have accepted the plea offer that had not been communicated to him by defense counsel. And in *Dew*, we agreed with the United States Court of Appeals for the Sixth Circuit that a defendant is not required to submit objective evidence to prove that he would have accepted the State's plea offer but for counsel's actions. *Id.* at 568 n.9 (citing *Magana v. Hofbauer*, 263 F.3d 542, 547 n.1 (6th Cir. 2001)). Thus, here, where Woods testified that he would have accepted the June 23, 2003, plea offer but for Zook's actions, which would have resulted in a maximum twenty-year sentence as opposed to the forty-five year sentence imposed after the bench trial, Woods has satisfied the prejudice prong under *Strickland*.

[18] Nonetheless, the State contends that, in addition to showing that he would have accepted the plea, Woods must also show "a reasonable probability the plea would have been entered without the prosecution cancelling it." Appellee's Br. at 22 (citing *Frye*, 132 S. Ct. at 1409). And the State maintains that Woods made no such showing. In *Frye*, the Court held that a defendant who alleges ineffective assistance of counsel for failure to communicate a plea offer must also show that the plea offer, if accepted by the defendant, "would have been adhered to by the prosecution and accepted by the trial court." *Id.* at 1411. In *Frye*, the defendant, who was out on bond, was arrested on a "new offense for driving without a license" and, the court stated that "there [wa]s reason to

doubt that the prosecution would have adhered to the agreement or that the trial court would have accepted it . . . unless they were required by state law to do so." *Id.*

[19] Here, in contrast to the defendant in *Frye*, Woods was in jail awaiting trial when the June 23, 2003, plea offer was made and, thus, there is no indication that intervening circumstances like an arrest would have led the State to retract the offer or the trial court to disapprove of the plea agreement. In addition, Woods' codefendant, who was nineteen years old at the time of the offense, pleaded guilty to Class A felony robbery approximately seven months after the offense, and the trial court approved the plea agreement and sentenced the codefendant to thirty-two years with ten years suspended. The evidence is largely undisputed that Woods' codefendant, not Woods, was the one who pushed the victim to the ground, causing the leg fracture. And, while Woods' criminal history at that time was extensive, the trial court would have likely accepted that plea agreement because it would have saved the State the time and resources required for a trial. Indeed, the trial court was likely to accept the plea agreement given how common plea agreements are in resolving criminal charges. *See, e.g.*, *Frye*, 132 S. Ct. at 1407 (noting that "ninety-four percent of state convictions are the result of guilty pleas"). Finally, there is no evidence that the State retracted the plea offer after it was extended to Zook.

[20] In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the defendant alleged that he was denied the effective assistance of counsel when his defense counsel gave him bad advice, which resulted in his rejection of a favorable plea offer and

conviction after trial. The Sixth Circuit had held that the defendant's counsel had rendered ineffective assistance in that regard. On appeal to the United States Supreme Court, the State conceded that counsel had rendered ineffective assistance, but the State disputed the defendant's contention that he was prejudiced thereby.

[21] The United States Supreme Court held that the defendant had shown that "but for counsel's deficient performance there is a reasonable probability he *and the trial court would have accepted the guilty plea*" that the defendant had rejected on counsel's bad advice. *Id.* at 1391 (emphasis added). In support of that holding, the Court cited two pages from the Sixth Circuit's decision where the court stated in relevant part that the defendant's self-serving statement that he would have accepted the plea but for his counsel's bad advice, along with evidence showing that defendant would have benefited from that plea agreement by receiving a shorter sentence than was imposed following trial, was sufficient to prove prejudice.[9] The *Lafler* decision is silent regarding the defendant's burden

---

[9] The dissent maintains that,

> even presuming there was a valid plea offer for Class B Felony robbery, the only evidence that Zook did not communicate such offer to Woods came from the testimony of Woods himself. The post-conviction court was not required to believe Woods' testimony about that fact, even if his testimony was "undisputed."

However, in *Lafler*, again, the issue was not whether defense counsel had communicated a plea offer to the defendant, but whether defense counsel's performance was deficient when he gave the defendant bad advice in rejecting the plea offer. In *Lafler*, the United States Supreme Court held that defendant's self-serving testimony that he would have accepted the plea offer but for defense counsel's bad advice, together with evidence that defendant would have benefited by the plea, was sufficient to prove prejudice. Likewise, here, Woods' testimony that Zook did not extend the plea offer to him, absent any evidence to the contrary, is sufficient to prove prejudice. Indeed, Woods' testimony in support of his post-conviction petition correlates with both his initial confession to police and his theory at trial that he was guilty of Class B, not Class A, felony robbery. Given that consistent position by Woods throughout the pendency of his case, there is no

to show that the trial court would have accepted the proposed plea agreement. Thus, to the extent *Frye* imposes such a burden, there is no discussion of any evidence in support of that showing in *Lafler*, which was handed down the same day as *Frye*. And in *Lew*, this court did not impose any such burden. 843 N.E.2d at 570-71. Regardless, we hold that Woods has demonstrated, without any evidence to suggest otherwise, a reasonable probability that the State would have kept the plea offer open until the Thursday deadline and that the trial court would have accepted the plea agreement.

[22] In sum, two weeks after the instant offense, police arrested then-fifteen-year-old Woods, and he immediately confessed to the robbery. Witnesses, including the victim, agreed that Woods' codefendant was the one who had pushed the victim to the ground, causing the leg fracture. Two months after Woods' arrest, the State extended a plea offer to Zook for Woods to plead guilty to Class B felony robbery and two Class D felonies with sentencing left to the trial court's discretion. That plea would have resulted in a maximum possible aggregate sentence of twenty-six years. The undisputed evidence shows that Zook never communicated that plea offer to Woods and that, if he had, Woods would have accepted the plea. Instead, following a bench trial, the trial court sentenced Woods to forty-five years with ten years suspended.

---

reason to doubt that Woods would have accepted the plea offer had Zook communicated it to him. In short, the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court, namely, that Zook did not communicate the plea offer to Woods.

[23]     We hold that Zook rendered ineffective assistance of counsel when he did not communicate the June 23, 2003, plea offer to Woods, which prejudiced Woods when he was convicted of Class A felony robbery and sentenced to forty-five years.  We therefore reverse the post-conviction court's judgment and Woods' conviction.  On remand, we instruct the court and the parties to proceed as if Woods has just received the June 23, 2003, plea offer, and he shall have four business days from the certification of this opinion to accept or reject the offer.[10] If Woods accepts the offer but the trial court decides not to accept it, then Woods shall have a new trial.  *See Dew*, 843 N.E.2d at 571.

[24]     Reversed.

Riley, J., concurs.

May, J., dissents with separate opinion.

---

[10] The four-business-day time frame approximates the time frame provided in the plea offer, which was issued on a Monday with a Thursday deadline.  Woods and his appellate counsel will also have at least thirty days before this opinion can be certified to consider the plea offer.  Further, we note that, while the State dismissed the charges in Cause No. 20C01-0305-FB-100 following Woods' conviction in the instant case, Woods must be afforded the opportunity to plead guilty to Class B felony robbery with sentencing left to the trial court's discretion.

# IN THE
# COURT OF APPEALS OF INDIANA

Derrell Woods,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

Court of Appeals Case No.
20A03-1506-PC-688

**May, Judge, dissenting.**

When a petitioner appeals the denial of a petition for post-conviction relief, which is a negative judgment, we may reverse only if that petitioner demonstrates "the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). I do not believe Woods has met that burden and, accordingly, I dissent.

Regarding whether Zook's performance was deficient, the majority holds: "Because the undisputed evidence shows that Zook did not communicate the

June 23, 2003, offer to Woods, his performance was deficient." Slip op. at ¶ 15. However, Zook is deceased and Maciejczyk has no memory of the plea negotiation process. Thus, even presuming there was a valid plea offer for Class B Felony robbery,[11] the only evidence that Zook did not communicate such offer to Woods came from the testimony of Woods himself. The post-conviction court was not required to believe Woods' testimony about that fact, even if his testimony was "undisputed." *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted."); *see also Popplewell v. State*, 428 N.E.2d 15, 16 (Ind. 1981) ("court was not obligated to believe Defendant's self serving testimony"). Nor are we permitted to find Woods' testimony credible and of sufficient weight to justify reversing the post-conviction court. *See Walker v. State*, 988 N.E.2d 1181, 1185 (Ind. Ct. App. 2013) ("we neither reweigh evidence nor judge witness credibility"), *trans. denied.*

[27] Woods had the heavy burden of overcoming the "strong presumption that counsel rendered adequate service." *Bethea v. State*, 983 N.E.2d 1134, 1139

---

[11] The majority also holds "there can be no dispute that the State offered Woods' attorney a plea deal for Woods to plead guilty to a lesser charge, and the trial court's findings and conclusion to the contrary are clear error." Slip op. at ¶ 15. However, the majority does not acknowledge Williams' admission that he "can't definitively say" whether the hand-written modification of paragraph 1 of the plea offer in Exhibit 6 from Class B Felony to Class A felony was made by Zook during negotiations or by Maciejczyk before Zook received it. (Tr. at 167.) As Woods did not call Maciejczyk to clarify this fact, I would not second-guess the inferences drawn by the post-conviction court. *See Walker v. State*, 988 N.E.2d 1181, 1185 (Ind. Ct. App. 2013) ("we consider only the evidence and reasonable inferences most favorable to the judgment"), *trans. denied.*

(Ind. 2013). Because I do not believe, based on the record before us, that our standard of review permits us to overturn the post-conviction court's decision, I would affirm it.