# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 10 2019, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jeffrey Allen Rowe
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Allen Rowe,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | April 10, 2019<br><br>Court of Appeals Case No.<br>18A-PC-1031<br><br>Appeal from the La Porte Circuit Court<br><br>The Honorable Thomas J. Alevizos, Judge<br><br>Trial Court Cause No.<br>46C01-0911-PC-228 |

**Najam, Judge.**

# Statement of the Case

Jeffrey Allen Rowe appeals the post-conviction court's denial of his petition for post-conviction relief. Rowe raises four issues for our review, which we revise and restate as the following three issues:

> 1. Whether the post-conviction court erred when it denied Rowe's two motions for summary disposition.
>
> 2. Whether the post-conviction court erred when it concluded that Rowe was not denied the effective assistance of his pretrial counsel.
>
> 3. Whether the post-conviction court erred when it concluded that Rowe was not denied the effective assistance of trial counsel.

We affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

The facts underlying Rowe's convictions were stated by this Court in his first direct appeal.

> The facts favorable to the convictions are that in January 2007, seventy-three-year-old Robert Toutloff resided at the Normandy Village apartments. Toutloff became acquainted with Bobbi Jo Lewis approximately four or five months before the events in question when she knocked on his apartment door one day and asked him for money so she could buy milk for her little girl. Toutloff gave her some money. From that point on, according to Toutloff, the two became friends. Toutloff explained: "I kind of looked after her. [I liked her]. She was a nice person." Lewis asked Toutloff for money "every two or three weeks, something

like that", ostensibly for essential items such as diapers and milk. Eventually, Lewis began to steal money from Toutloff. She once stole $290 and he had her arrested. Toutloff estimated that Lewis stole money from him "half a dozen times." Lewis continued to come around and Toutloff continued to give her money.

On the evening of January 21, 2007, Lewis was with Rowe, who was her boyfriend, and Jennifer Benson, who was her sister. The three were driving around in Lewis's father's car. After they purchased five dollars worth of gas, the group was out of money. With Rowe driving, they traveled to the Normandy Apartments, where a friend, Charles Everly, gave Lewis $20. Lewis bought crack cocaine with the money and the three smoked it. After that, Lewis told Rowe that Toutloff kept some money in his right front pocket. Aware that Lewis had gotten money from Toutloff in the past, Rowe put on a hooded sweatshirt, went to Toutloff's apartment, and knocked on his door. Inside, Toutloff was eating dinner when he heard the knock. He went to the door but did not see anyone through the peephole, so he returned to his meal. When he heard a second knock, he went to the door again and this time thought he saw a police officer outside the door, so he unlocked the deadbolt. At that moment, someone violently pushed the door open from the outside, knocking Toutloff to the floor on his back. The intruder jumped on top of Toutloff, straddling his stomach, and began punching Toutloff in the face and head. The man repeatedly demanded, "We know you've got money, where is it?" As the beating continued, Toutloff was eventually able to say, "In here", pointing to a single-drawer filing cabinet right next to them. Still lying on his back, Toutloff pulled the drawer open and took out a small leather shaving kit. The intruder took the shaving kit, opened it, and found approximately $70 inside. The intruder took out the money, got off of Toutloff, and fled from the apartment.

Toutloff called the police, who responded and took Toutloff's description of what had occurred. Toutloff was taken to the

hospital, where it was determined that he had suffered cuts to his face and neck, a broken nose, and severe bruising on his torso. He remained in the hospital for three days.

Returning to Rowe, approximately five minutes after he had left Lewis and Benson in the parking lot, Rowe came running back to the car, jumped into the driver's seat, and "squealed out." Rowe's hands were bleeding from small cuts around his knuckles. He informed them, "I got it." He told the women that Toutloff did not have money in his pocket, but when Rowe punched him hard, "the dude told him it was in the cabinet in a drawer." Rowe showed his companions the money he had taken from Toutloff. They traveled to a Family Express convenience store on Franklin Road, where Rowe purchased some cigarettes. After they left the store, Lewis called someone and arranged a drug purchase. A short time later, Rowe gave the drug source "about like $70, $80" in exchange for crack cocaine.

Detective Larry Litchford of the Michigan City Police Department investigated the robbery. Detective Litchford knew of Toutloff's history with Lewis, and in fact had in the recent past counseled Toutloff to have no contact with Lewis. After speaking with Toutloff following the robbery, Detective Litchford "knew Bobbie Jo and knew that if anything happened to Mr. Toutloff, that more than likely, she either knew or she was around when this incident occurred." By coincidence, Detective Litchford learned that Sergeant Carey Brinkman was conducting an investigation of a death that occurred at the Normandy Apartments on the same night Toutloff was robbed. In speaking with Sergeant Brinkman, Detective Litchford learned that Lewis had a boyfriend named Jeff Rowe, and that Rowe, Lewis, and Benson had been in the apartment complex on the night of the robbery. Sergeant Brinkman contacted Rowe and Lewis and asked them to come to the police station for an interview regarding the death investigation.

Rowe and Lewis went to the police station on Thursday, January 25, 2007, and spoke with Detective Litchford and Sergeant Brinkman regarding the death at the Normandy Apartments. Thereafter, Detective Litchford asked Lewis if she would be willing to voluntarily speak with him about the Toutloff robbery. She agreed. After waiving her rights, Lewis told him about her and Rowe's and Benson's activities that night, claiming they had nothing to do with the robbery. When Detective Litchford told her that he knew she was not telling him the truth, she admitted that the three had driven to Toutloff's apartment, where Rowe left the car saying he was going to get some money from Toutloff. According to Lewis, Rowe came running back to the car a few minutes later, got in, claimed he had hit Toutloff, and showed them the money he had taken from Toutloff, which Lewis estimated to be $75. Detective Litchford also spoke with Rowe, who denied even being in the apartment complex at the time of the robbery. During his interview with Rowe, Detective Litchford observed cuts on Rowe's hands and knuckles. Detective Litchford then interviewed a witness connected to the death investigation in the Normandy apartments, and that man, the aforementioned Everly, identified photos of Lewis and Rowe as people who came to his apartment in Normandy Village asking for money, and stated they were there at about the same time Toutloff was robbed.

On January 30, 2007, Rowe was charged with robbery and burglary, both as class A felonies. On March 22, 2007, a count was added alleging that Rowe was a habitual offender. Following a jury trial, Rowe was convicted as charged and found to be a habitual offender. The court imposed concurrent, forty-year sentences for each of the class A felony convictions and enhanced the executed sentence by thirty years based upon the habitual offender finding. Thus, Rowe received a seventy-year executed sentence.

*Rowe v. State*, No. 46A03-0809-CR-439, 2009 WL 1175664, at *1-3 (Ind. Ct. App. Apr. 30, 2009) (footnote and citations to the record omitted) (*Rowe I*).

[4]     On appeal, this Court held that Rowe's convictions for robbery and burglary, both as Class A felonies, violated double jeopardy principles because both convictions were elevated from lesser offenses based on the same serious injury. *Id*. at *3. This Court also held that the trial court erred when it sentenced Rowe because it had failed to specify which conviction it was enhancing when it imposed the habitual offender enhancement. *Id*. Accordingly, this Court remanded Rowe's case to the trial court with instructions for the trial court to reduce Rowe's burglary conviction to a Class B felony and to resentence Rowe. *Id*.

[5]     On remand, the trial court sentenced Rowe to forty years based on his conviction for robbery, as a Class A felony, and enhanced that sentence by thirty years based on the habitual offender adjudication. *Rowe v. State*, No. 46A03-0907-CR-344, 2010 WL 2812698, at *1 (Ind. Ct. App. July 19, 2010) (*Rowe II*). And the trial court sentenced him to a concurrent sentence of fifteen years for his conviction for burglary, as a Class B felony. *Id*. Rowe appealed his sentence, and this Court affirmed the trial court. *Id*.

[6]     Thereafter, Rowe, *pro se*, filed an amended petition for post-conviction relief. In that petition, Rowe alleged that his pretrial and trial counsel had both rendered ineffective assistance when they had failed to communicate his requested plea agreement to the State, under which he had proposed pleading guilty to

robbery, as a Class B felony, in exchange for a twelve-year sentence. Rowe further alleged that his trial counsel had rendered ineffective assistance when he had failed to inform Rowe of a plea offer from the State that called for Rowe to plead guilty to either robbery or burglary, as a Class A felony, and to serve a twenty-year sentence.[1]

[7] Rowe filed a motion for partial summary disposition. In that motion, Rowe alleged that he was entitled to judgment as a matter of law on his claim that his attorneys had rendered ineffective assistance of counsel. In support of that motion, Rowe included as an attachment an affidavit in which he stated that neither his pretrial nor his trial counsel had communicated his proposed twelve-year plea offer to the State and that his trial counsel had never informed him of the twenty-year plea offer from the State, which he asserted he would have accepted had he known about it. He also attached a letter from his pretrial counsel in which his pretrial counsel informed Rowe that Rowe's proposed plea agreement "will simply not fly" with the State and that she was "not about to take a plea to the Prosecuting Attorney that will cause him to laugh" at her. Ex. at 7. The post-conviction court denied Rowe's motion.

[8] Rowe then filed a second motion for partial summary disposition in which he again alleged that he was entitled to judgment as a matter of law on his ineffective assistance of counsel claim as it pertained to his trial counsel because his trial counsel had failed to communicate the twenty-year plea offer from the

---

[1] There is no dispute that the State sent a twenty-year offer to Rowe's trial counsel.

State. The State responded to Rowe's second motion and included an affidavit from Rowe's trial counsel as an attachment. In that affidavit, Rowe's trial counsel stated that he had received a plea offer from the State, that he had communicated that offer to Rowe, and that Rowe had rejected the State's offer. The post-conviction court denied Rowe's second motion for partial summary disposition.

[9] The post-conviction court held an evidentiary hearing on Rowe's petition for post-conviction relief on December 1, 2017, and August 10, 2018. During the hearing, Rowe questioned his pretrial counsel about her decision to not take his proposed twelve-year plea offer to the State. Rowe's pretrial counsel testified that, if she has a client who is "ultimately interested in a fruitful negotiation," there are certain circumstances in which "it certainly doesn't do anyone any good to start in a position that will solely put the State of the mindset of either anger or disdain" because, once that happens, "there's never going to be any type of fruitful negotiation." Tr. Vol. II at 116.

[10] After Rowe questioned his pretrial counsel, he attempted to call his trial counsel as a witness, but his trial counsel was not present. The court indicated that it had ordered the clerk's office to issue a subpoena for Rowe's trial counsel but that the clerk's office "apparently" did not issue the subpoena. *Id.* at 122. The court then noted that it was missing a person "that we definitely need." *Id.* The court determined that it would hold an additional hearing on April 5, 2018, and that it would "make sure" to subpoena Rowe's trial counsel. *Id.* at 123.

[11]     Rowe then questioned the prosecuting attorney who had filed the criminal charges against him. When Rowe asked the prosecuting attorney if he would have agreed to Rowe's twelve-year plea, the prosecuting attorney responded, "[p]robably not." Tr. Vol. II at 127. The prosecuting attorney further testified that he "likely would have" countered a twelve-year plea with terms that "certainly would not have been any less" than the terms contained in the twenty-year plea offer. *Id*. at 128.

[12]     Rowe also testified at the hearing. Rowe testified that he had requested that his pretrial counsel relay a twelve-year plea offer to the State but that his pretrial counsel "refused" to do so because his twelve-year offer was not realistic. *Id*. at 142. He further testified that, after his trial counsel began representing him, he asked his trial counsel to relay the same twelve-year agreement to the State but that his trial counsel "said that if [he] wanted a plea agreement, [he] must be willing to accept 30 to 40 years because the State believes that they have a strong case." *Id*. at 143. Rowe further testified that, while he would not accept a thirty or forty-year sentence, his intention was to start at twelve years and "have room to negotiate." *Id*. at 144.

[13]     Additionally, Rowe testified that, had his trial counsel informed him of the State's twenty-year plea offer, he would have accepted that offer because, while he "didn't do exactly what had . . . been argued by the State" at his trial, he "was in the apartment when the situation occurred." *Id*. at 146. Specifically, Rowe testified that he was in the apartment to distract the man who lived there so that his friend could get money. He further testified that his friend "just

snapped" and "got on top" of the man who lived in the apartment and "started hitting him all over his midsection." *Id*. at 148. Rowe further testified that, while he "never touched" the man in the apartment, "[he] committed burglary pointblank. [He] had culpability. [He] could have accepted and legitimately pled guilty to an A felony burglary because . . . she caused serious bodily injury to him, and [he] didn't stop her." *Id*. at 149.

[14] On April 3, 2018, the post-conviction court entered its findings and conclusions in which it cancelled the April 5, 2018, hearing and denied Rowe's petition for post-conviction relief. In particular, the court found and concluded as follows:

> 7. At the most recent hearing in this matter, on August 10th . . . [Rowe] admitted to the crimes for which he was convicted and now contests. After being cautioned by the Court and the State that statements made in open court could be used against him, and with the court *assuming*[] that [Rowe] misspoke, [Rowe] confirmed the same admission of guilt when prompted.
>
> 8. In researching Indiana law for precedent involving an admission of guilt during a PCR proceeding, the Court finds no guidance. Instead, the Court relies on the clear language of Section 1 of Indiana PCR Rule 1.
>
> 9. The Court is mindful that, if successful with his PCR, [Rowe] would be entitled to a new trial. However, the Court finds that the most relevant evidence submitted during the PCR hearing renders futile both [Rowe's] petition and any future retrial. . . .
>
> 10. [Rowe's] admission of guilt undermines the PCR purpose *but* could be viewed as evidence of material fact which was not previously presented or heard at [Rowe's] trial. Unfortunately

for [Rowe], that type of evidence does not lend to his favor, nor can it be overlooked if the Court is to consider the "interests of justice" before granting a PCR petition to vacate a conviction. Oppositely, the admission of guilt, being entered as evidence in the PCR hearing, outweighs all other evidence when considering the interests of justice.

* * *

17. The Court finds that [Rowe's] claims of ineffective assistance of counsel are unfounded.

* * *

21. [Rowe] also argues that his attorneys failed him during plea bargaining. The Court, mindful that a criminal defendant has no constitutional right to engage in plea bargaining, also finds that [Rowe] has failed to show that [his] attorneys . . . did not act effectively in attempting to negotiate a plea bargain on [Rowe's] behalf.

* * *

23. The Court finds that [Rowe] has failed to show how [his attorneys'] representation of [Rowe] fell short of the standard of defense attorneys. The Court is left with the presumption that each defense attorney performed effectively as [Rowe's] counsel.

* * *

26. In light of [Rowe's] admission of guilt, and as this Court heard ample argument and evidence submitted at the three evidentiary hearings, the Court finds that the April 5, 2018[,

hearing] is unnecessary and that sufficient evidence has been entered for this Court to make today's determination.

Appellant's App. Vol. II at 23-29 (emphasis in original). The court denied Rowe's petition for post-conviction relief, and this appeal ensued.

# Discussion and Decision

## *Standard of Review*

[15] Rowe appeals the post-conviction court's denial of his petition for post-conviction relief. As our Supreme Court has stated:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

Further, Rowe alleges that the post-conviction court erred when it determined that he did not receive the ineffective assistance of counsel.

> When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). The "[f]ailure to satisfy either prong will cause the claim to fail." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

### *Issue One: Motions for Partial Summary Disposition*

Rowe first contends that the post-conviction court erred when it denied his two motions[2] for partial summary disposition. Indiana Post-Conviction Rule 1(4)(g) provides that the court

---

[2] Rowe filed a third motion for partial summary judgment, which the post-conviction court also denied. But Rowe does not appeal the post-conviction court's denial of that motion.

may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answer to interrogatories, admission, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

As the Indiana Supreme Court has stated:

> The summary judgment procedure that is available under Indiana Post-Conviction Rule 1(4)(g) is the same as under Trial Rule 56(C). . . . The moving party must designate evidence to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. After such a showing, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* Any doubts about the existence of a fact or the inferences to be drawn therefrom are to be resolved in favor of the nonmoving party. *Id.*

*Hough v. State*, 690 N.E.2d 267, 269-70 (Ind. 1997) (internal citation omitted).[3]

[17]　Here, Rowe contends that the post-conviction court erred when it denied his two motions for summary disposition because he "designated sufficient facts and admissible evidence . . . to demonstrate that there is no genuine issue of any material fact and that Rowe is entitled to summary judgment as a matter of law." Appellant's Br. at 37. We address each motion in turn.

---

[3] The State asserts that Rowe's arguments on this issue are moot since the post-conviction court entered a final judgment denying his petition. We cannot agree. The summary judgment procedure under Indiana Post-Conviction Rule 1(4)(g) is the same as under Trial Rule 56(C). *Hough*, 690 N.E.2d at 269. And this Court "has long addressed appeals from denials of motions for summary judgment following entry of a final judgment or order." *Keith, v. Mendus*, 661 N.E.2d 26, 35 (Ind. Ct. App. 1996). Indeed, a nonfinal summary judgment that is not certified for interlocutory review would otherwise not be appealable. Accordingly, we will review the post-conviction court's denial of Rowe's motions for summary disposition even though the court subsequently entered a final judgment.

*First Motion for Partial Summary Disposition*

Rowe contends that the trial court erred when it denied his first motion for summary disposition. In that motion, Rowe alleged that he was entitled to judgment as a matter of law on his claim of ineffective assistance of counsel because his pretrial and trial attorneys had failed to communicate his twelve-year plea to the State and because his trial counsel had failed to communicate the State's twenty-year plea to him. In support of that motion, Rowe included as an attachment his affidavit in which he stated that neither his pretrial nor his trial counsel had communicated his proposed plea to the State and that his trial counsel had never informed him of the twenty-year plea offer from the State, which he asserted he would have accepted had he known about it. He also attached a letter from his pretrial counsel in which his pretrial counsel informed Rowe that Rowe's proposed twelve-year plea agreement "will simply not fly" with the State and that she was "not about to take a plea to the Prosecuting Attorney that will cause him to laugh" at her. Ex. at 7. And Rowe contends that, because the State failed to designate evidence in response to his motion to demonstrate that a genuine question of material fact existed, he was entitled to judgment as a matter of law. We cannot agree.

As stated above, the summary disposition procedure that is available under Post-Conviction Rule 1(4)(g) is the same as the procedure for summary judgment under Trial Rule 56(C). *See Hough*, 690 N.E.2d at 269. The initial burden was on Rowe as the movant for summary disposition to designate evidence to prove that there were no genuine issues of material fact. We agree

with Rowe that the evidence he designated—his own affidavit and the letter from his pretrial counsel—demonstrated that no genuine issue of material fact existed regarding whether either of his attorneys relayed his twelve-year agreement to the State. Indeed, there is no dispute that neither attorney took that offer to the State.

[20] However, in order to show that he was entitled to summary disposition on his claim that his pretrial and trial counsel both rendered ineffective assistance for failing to take his twelve-year plea to the State, Rowe was required to establish that there was no genuine issue of material fact regarding whether that failure constituted deficient performance and whether Rowe had been prejudiced by that deficient performance. *See Campbell*, 19 N.E.3d at 274. And Rowe did not designate any evidence to demonstrate that the State would have accepted the twelve-year plea. Accordingly, Rowe did not designate any evidence to demonstrate that he was prejudiced by his counsel's failure to take his proffered plea agreement to the State.

[21] Still, in his first motion for summary disposition, Rowe also asserted that he was entitled to judgment as a matter of law on his claim that he had received ineffective assistance from his trial counsel because his trial counsel had failed to relay the State's twenty-year plea offer to him. But the only evidence that Rowe designated to support his claim that his trial counsel had not communicated the State's plea to him was his own self-serving affidavit. And it is well settled that summary judgment "is inappropriate if a reasonable trier of fact could choose to disbelieve the movant's account of the facts." *Insuremax*

*Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind. Ct. App. 2008). Here, the post-conviction court was not required to believe Rowe's statements in his affidavit. Accordingly, we cannot say that the post-conviction court erred when it denied his motion for partial summary disposition as it relates to either his attorneys' failure to relay his twelve-year proposal or his trial counsel's alleged failure to communicate the State's twenty-year plea offer to him. We therefore affirm the post-conviction court's denial of Rowe's first motion for partial summary disposition.

*Second Motion for Partial Summary Disposition*

[22] Rowe also asserts that the post-conviction court erred when it denied his second motion for summary disposition in which he asserted that his trial counsel had rendered ineffective assistance when he failed to communicate the State's twenty-year plea offer to Rowe. In support of that motion, Rowe again attached an affidavit in which he stated that his trial counsel had never communicated the State's offer to him.

[23] But, again, the post-conviction court was not required to believe Rowe's self-serving affidavit. *See Insuremax Ins. Co.*, 879 N.E.2d at 1190. Further, even if Rowe had met his burden to designate evidence that proved that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law, the burden then shifted to the State to show that there was a genuine issue of material fact. *See Hough*, 690 N.E.2d at 269-70. And, in response to Rowe's second motion, the State designated as evidence the affidavit from Rowe's trial counsel in which he stated that he had communicated the State's

plea offer to Rowe but that Rowe had rejected that offer. Accordingly, the State met its burden to demonstrate that a question of material fact existed regarding whether Rowe's trial counsel had communicated the State's plea offer to Rowe. We therefore cannot say that the post-conviction court erred when it denied Rowe's second motion for partial summary disposition.

### Issue Two: Effectiveness of Pretrial Counsel

[24] Rowe next contends that he received ineffective assistance from his pretrial counsel. To demonstrate that he received ineffective assistance from his pretrial counsel, Rowe was required to show deficient performance and that he was prejudiced by that deficient performance. *Campbell*, 19 N.E.3d 271 at 274. Rowe specifically alleges that he received ineffective assistance from his pretrial counsel because she "fail[ed]/refuse[d] to relay Rowe's 12[-]year plea offer to the State[.]" Appellant's Br. at 43. But we agree with the State that Rowe has not demonstrated that the failure of his pretrial counsel to relay his proposed twelve-year agreement to the State amounted to deficient performance.

[25] As the Indiana Supreme Court has stated:

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (citations omitted).

Rowe questioned his pretrial counsel at his post-conviction hearing. Rowe's pretrial counsel testified that, "if [she] ha[s] a client who is ultimately interested in fruitful negotiation, then in certain circumstances it certainly doesn't do anyone any good to start in a position that will solely put the State of the mindset of either anger or disdain" because, at that point, "there's never going to be any type of fruitful negotiation." Tr. Vol. II at 116. Based on that testimony it is clear that Rowe's pretrial counsel made a strategic decision not to communicate his twelve-year plea offer to the State. We cannot say that Rowe's pretrial counsel's strategy to not take a plea agreement to the State that would potentially ruin any chance for future, fruitful negotiations was "'so deficient or unreasonable as to fall outside the objective standard of reasonableness.'" *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002) (quoting *Potter v. State*, 684 B.E.2d 1127, 1133 (Ind. 1997)). Accordingly, Rowe has not demonstrated that the post-conviction court erred when it found that his pretrial counsel was not ineffective.

### Issue Three: Effectiveness of Trial Counsel

Rowe next contends that the post-conviction court erred when it concluded that he received the effective assistance of trial counsel. Again, to show that he received the ineffective assistance of trial counsel, Rowe must demonstrate that his counsel's performance was deficient and that he was prejudiced by that deficient performance. *See Campbell*, 19 N.E.3d at 274. And "most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Rowe specifically contends

that his trial counsel rendered ineffective assistance when he failed to communicate Rowe's proposed twelve-year plea offer to the State and when he failed to communicate the State's twenty-year plea offer to Rowe. We address each contention in turn.

*Rowe's Twelve-Year Plea Offer*

[28] Rowe first contends that his trial counsel's performance was deficient because his trial counsel did not relay his proposed twelve-year agreement to the State. Unlike with his pre-trial counsel, Rowe was not able to question his trial counsel regarding his refusal to relay Rowe's proposed agreement to the State. Accordingly, we cannot ascertain whether Rowe's trial counsel's strategy was reasonable or whether it was deficient.

[29] However, even if Rowe could demonstrate that his trial counsel's strategy was deficient, Rowe has not demonstrated that he was prejudiced by his trial counsel's failure to present to the State Rowe's proposed plea agreement. At the post-conviction hearing, Rowe was able to question the prosecuting attorney who had filed the charges against him. The prosecuting attorney testified that he likely would not have accepted that offer. Rather, he likely would have countered Rowe's twelve-year plea with a plea offer that contained terms that "certainly would not have been any less" than the terms contained in the twenty-year plea offer. *Id*. at 128. Accordingly, even if Rowe's trial counsel had relayed the twelve-year plea offer, the State would have responded with terms that were no less than the terms contained in the twenty-year offer that the State offered to Rowe. We therefore cannot say that, but for his trial

counsel's failure to communicate the twelve-year plea agreement, Rowe would have received a better offer than the twenty-year plea the State offered to Rowe's trial counsel. Rowe has not demonstrated that he received ineffective assistance of counsel on this issue.

*State's Twenty-Year Plea Offer*

[30] Rowe next asserts that he received ineffective assistance from his trial counsel when his counsel failed to communicate the State's twenty-year plea offer to him. Rowe contends that the post-conviction court erred when it denied his petition for post-conviction relief because the court's findings do not support its judgment that he received the effective assistance of trial counsel on this issue.

[31] It is well settled that "[a] court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition." *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001). Further, the post-conviction court's findings "must be supported by facts and the conclusions must be supported by the law." *Id.* On appeal, Rowe specifically asserts that the findings do not support the court's conclusion that "sufficient evidence has been entered" and that it did not need to hold the April 5, 2018, hearing in order to conclude that Rowe received the effective assistance of trial counsel as it relates to the State's twenty-year plea offer. Appellant's App. Vol. II at 29. We must agree.

[32] Here, to support its conclusion that Rowe had failed to show that his trial counsel acted ineffectively in attempting to negotiate a plea bargain on Rowe's

behalf, the post-conviction court first found that Rowe had no constitutional right to engage in plea bargaining. The post-conviction court is correct that "[a] criminal defendant has no constitutional right to engage in plea bargaining." *Bethea v. State*, 983 N.E.2d 1134, 1144 (Ind. 2013) (internal citation omitted). Further, the State has no duty to plea bargain. *See id.*

[33] However, whether Rowe has a constitutional right to plea bargain was not the question before the post-conviction court. Rather, the question was whether Rowe had received effective assistance from his trial counsel. And even though Rowe has no constitutional right to plea bargain, "'defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.'" *Woods v. State*, 48 N.E.3d 374, 381 (Ind. Ct. App. 2015) (quoting *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). Accordingly, once the State decided to engage in plea bargaining and offer a plea to Rowe's trial counsel, Rowe's trial counsel was obligated to communicate that offer to Rowe. And the failure of a defense attorney to communicate a plea offer to an accused is deficient performance. *See id.*

[34] Because the question of whether Rowe received the effective assistance of trial counsel turns on whether his trial counsel communicated the State's twenty-year plea offer to him and not whether he had the right to engage in plea bargaining, the post-conviction court's finding that Rowe did not have the constitutional right to engage in plea bargaining does not support its conclusion that Rowe did not receive ineffective assistance from his trial counsel.

[35] The post-conviction court also based its ultimate conclusion that the supplemental hearing was unnecessary and that Rowe had received the effective assistance of trial counsel on its finding that Rowe admitted to having committed the underlying offenses to the post-conviction court. But Rowe's guilt or innocence of those offenses is again not relevant to the question of whether his trial counsel had conveyed the plea agreement from the State and, therefore, rendered effective assistance. Indeed, there is no dispute that Rowe's underlying convictions are supported by the evidence. And, in *Woods*, this Court held that a defendant had been prejudiced by his trial counsel's failure to convey an offer from the State for him to plead guilty to robbery, as a Class B felony, when the defendant never denied having participated in the robbery and when his trial strategy had been to admit to the Class B felony robbery because those facts were both "consistent with his testimony that he would have accepted the plea offer if he had known about it." 48 N.E.2d at 381.

[36] Similarly, here, Rowe's testimony that he committed burglary and could have pleaded guilty to burglary, as a Class A felony, is consistent with his testimony that he would have accepted the State's offer to plead guilty to either burglary or robbery, as a Class A felony. Rowe's admission of guilt does not support the post-conviction court's finding that his counsel acted effectively but, rather, is consistent with his testimony that he was prejudiced by his trial counsel's alleged failure to communicate the plea agreement because he would have accepted the State's twenty-year plea offer, which would have been a materially more favorable sentence than the sentence he ultimately received.

Accordingly, the post-conviction court's finding that Rowe admitted to his guilt does not support the conclusion that Rowe received the effective assistance of counsel.

[37] The post-conviction court's findings that Rowe did not have a constitutional right to engage in plea bargaining and that Rowe had admitted his guilt do not support the post-conviction court's conclusion that he did not receive the ineffective assistance of trial counsel. Before the post-conviction court can make a conclusion regarding whether Rowe received effective assistance from his trial counsel related to the State's twenty-year plea, the court must first determine whether Rowe's trial counsel presented the State's plea offer to Rowe. Here, the only evidence submitted that Rowe's counsel conveyed the State's plea offer to him was an affidavit by Rowe's trial counsel in which he stated that he had communicated the State's plea offer to Rowe.

[38] But, as discussed above, the affidavit from Rowe's trial counsel created a genuine issue of material fact regarding whether Rowe's trial counsel had relayed the plea agreement to him. And Rowe should have been provided the opportunity to present evidence to resolve that question of fact. However, because the post-conviction court cancelled the supplemental hearing at which Rowe's trial counsel was scheduled to appear, Rowe was not able to question his trial counsel in order to challenge the statements made in the affidavit or otherwise present evidence—whether in the form of testimony from his trial counsel or exhibits—in support of his claim that his trial counsel had not communicated the State's offer to him and had, therefore, not rendered

effective assistance. Thus, while the affidavit was sufficient to preclude summary disposition, without Rowe having the opportunity to challenge it, the affidavit was not sufficient for the trial court to determine that Rowe had received the effective assistance of trial counsel. Accordingly, we remand to the post-conviction court to hold the supplemental hearing and to allow Rowe to question his trial counsel and to present evidence relevant to the question of whether Rowe's trial counsel had communicated the State's twenty-year plea offer to him.[4]

[39] In sum, we hold that the post-conviction court did not err when it denied Rowe's two motions for summary disposition or when it concluded that Rowe had received effective assistance from his pretrial counsel. Accordingly, we affirm the post-conviction court on those issues. However, we hold that the post-conviction court's findings regarding Rowe's constitutional right to plea bargain and his admission of guilt do not support its conclusion that Rowe had received effective assistance from his trial counsel as it relates to the State's plea offer. We further hold that Rowe must be given the opportunity to present evidence to support his claim that his counsel did not communicate the State's offer to him. We therefore reverse the post-conviction court's order on that

---

[4] We also agree with Rowe that, contrary to the post-conviction court's statement in its findings, the remedy available to Rowe if his trial counsel did ineffectively fail to tender the State's twenty-year offer to him is for the court and the parties to proceed as if Rowe had just received the State's offer. *See Woods*, 48 N.E.3d at 383. A new trial is then only necessary if Rowe accepts the plea but the trial court rejects it. *See id*. Accordingly, on remand, if Rowe demonstrates that his trial counsel failed to convey the plea agreement and that the failure to communicate the plea prejudiced him, the court and the parties are instructed to proceed as if Rowe has just received the twenty-year offer. *See id*.

issue, and we remand with instructions for the post-conviction court to hold the supplemental hearing.

[40]    Affirmed in part, reversed in part, and remanded for further proceedings.


Baker, J., and Robb, J., concur.