NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Belknap
No. 2019-0280

THE STATE OF NEW HAMPSHIRE

v.

KEITH FITZGERALD

Argued: May 20, 2020
Opinion Issued: September 22, 2020

Gordon J. MacDonald, attorney general (Gregory M. Albert, assistant attorney general, on the brief and orally), for the State.

Ramsdell Law Firm, of Concord (Michael D. Ramsdell on the brief and orally), for the defendant.

HICKS, J.  The defendant, Keith Fitzgerald, appeals an order of the Superior Court (Smukler, J.) denying his motion for a new trial based on ineffective assistance of counsel.  After an evidentiary hearing on the motion, the court ruled that the defendant failed to sustain his burden of showing that the outcome of his case would have been different but for his counsel's performance.  On appeal, the defendant argues that the trial court erred by concluding that, even if defense counsel rendered ineffective assistance, the defendant was not prejudiced by: (1) defense counsel's failure to adequately advise the defendant regarding the merits of the State's plea offer; or (2) counsel's failure either to object to the trial court's jury instructions on a sentence enhancement provision on the basis that it had not been presented to

the grand jury for indictment, or to move for dismissal of the indictment on that same basis.  For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

I

The trial court found, or the record supports, the following facts.  In December 2015, the defendant was indicted on five counts of theft by unauthorized taking in violation of RSA 637:3 (2016).  The following appears near the bottom of each indictment: "RSA 637:3 (Class A Felony); 651:6" and "Penalty: NHSP 7 ½ - 15 years and up to $4,000 fine."  Defense counsel, whose assistance is alleged to have been ineffective, was retained by the defendant in March 2016, after the defendant's prior counsel withdrew.  Prior to representing the defendant, defense counsel had tried only one felony case, which was a sexual assault case.

Defense counsel, the defendant, and the prosecutor engaged in several plea discussions leading up to trial.  In January 2016, the State offered a plea agreement through the defendant's previous counsel of five to ten years, stand committed, with restitution in the amount of $409,980 on one indictment and suspended incarceration on the four remaining indictments.  The letter containing the plea offer also purported "to notify [the defendant] of the possible application of RSA 651:6 to each of the five indictments in this case based upon RSA 651:6, I(l)."  RSA 651:6, (I)(l) (2016) provides that a defendant may be sentenced pursuant to the sentence enhancements contained in RSA 651:6, III (2016) if the defendant:

> Has committed or attempted to commit any of the crimes defined in RSA 637 or RSA 638 against a victim who is 65 years of age or older or who has a physical or mental disability and that in perpetrating the crime, the defendant intended to take advantage of the victim's age or a physical or mental condition that impaired the victim's ability to manage his or her property or financial resources or to protect his or her rights or interests.

In June 2016, defense counsel drafted a counteroffer that included the following terms: payment of $409,980 in restitution on a schedule of the defendant's choosing; a plea of guilty to all counts reduced to Class A misdemeanors; one year in the house of corrections on each count to run concurrently, all suspended for five years good behavior; and community service.  Before forwarding the counteroffer to the State, defense counsel e-mailed it to the defendant for his consideration.  In that e-mail he stated, "As we have discussed in detail, you do not have to plead guilty at all, and you have a right to have a trial."

2

The parties were unable to reach a plea agreement at the first settlement conference in August 2016, but they filed an assented-to motion stating that the "parties engaged in productive settlement discussions" and "are in agreement that the defendant have some time to consider the State's current offer." Following that conference, defense counsel sent an e-mail requesting the State to reiterate its most recent plea offer. The State sent a reply e-mail restating its latest offer, explaining that, in exchange for pleading guilty to each of the five pending charges, the defendant would serve two years in the Belknap County House of Corrections, followed by two years on administrative home confinement. Additionally, the defendant would have a four to ten-year suspended sentence with a window of ten years after completion of his final year of home confinement. Defense counsel responded to the State's offer with the counteroffer that he and the defendant had discussed in June 2016. In his e-mail to the State, defense counsel explained that the defendant "has not ruled out a plea including some incarceration, so it makes sense to return to the second day of the Settlement Conference regardless of your response [to the defendant's counteroffer]." The State rejected the defendant's counteroffer and stated that its most recent offer was "essentially as low as the State was willing to go on a negotiated disposition."

Defense counsel forwarded the State's e-mail to the defendant and, in the ensuing string of e-mails between the two, wrote that he was not "in any way opposed to [the defendant] taking this case to trial." Defense counsel indicated to the defendant that he believed there was a very good chance that a jury would find a reasonable doubt as to whether the defendant was not authorized by his father to have the money at issue. Prior to trial, the defendant told defense counsel in an e-mail that he was feeling good about their "direction" for trial. Defense counsel replied, "I am feeling good about it too."

At trial, the jury heard evidence that the defendant made a number of transactions using his father's assets without consulting his father or the defendant's siblings, and that, after obtaining his father's durable power of attorney, he moved his father's assets from accounts and trusts in his father's name to accounts only in the defendant's name. The jury also heard testimony from the defendant that his father authorized the transactions. On cross-examination, the State elicited a number of admissions from the defendant, which defense counsel did not anticipate, that severely damaged the defendant's credibility and undercut his defense.

At the conclusion of trial, pursuant to the sentence enhancement contained in RSA 651:6, the jury was instructed to determine whether the defendant's father was 65 years or older and whether the defendant, in perpetrating a crime under RSA 637:3, intended to take advantage of the victim's age. Defense counsel did not object to these instructions, and never moved for dismissal of the indictments, despite the fact that the sentence enhancement provision was never presented to the grand jury. The jury

3

returned verdicts of guilty on all five counts of theft by unauthorized taking. Additionally, the jury specified that it had determined that the State had proven the sentence enhancement factors beyond a reasonable doubt. Ultimately, the court sentenced the defendant to a term of not less than nine and one-half years and not more than 25 years in the New Hampshire State Prison.

Following his conviction, the defendant sent an e-mail to defense counsel with the subject line "Elder Abuse (over 65 years old) charge?" in which the defendant asked: "Can you please give me the info on the last charge they found me guilty of? I can't find it in the other indictments." In response, defense counsel informed the defendant that "[i]t is not a separate charge. It is a sentence enhancement provision. That is the special felony aspect we discussed. Let's set up a time this week to talk or meet to discuss all of the issues you are raising."

On January 25, 2019, the court held an evidentiary hearing on the defendant's motion for a new trial based on ineffective assistance of counsel. In support of his claim, the defendant presented testimony of defense counsel. When asked about the advice that he provided to the defendant regarding the sentence enhancement provision, defense counsel testified that he did not "recall specifically talking to [the defendant] about the distinction between the Class A felonies and the extended term." Counsel further testified that, "having reviewed the file, I don't see any documents where I spelled [the sentence enhancement provision] out for [the defendant] explicitly." Counsel also testified that he had believed that if the defendant were to be convicted at trial, it would have been unlikely that he would have received a sentence of more than three years. However, the defendant's potential sentencing exposure was actually 150 years due to the sentence enhancement contained in RSA 651:6. Defense counsel further testified that he gave the defendant the impression that the sentence he might receive if he were convicted at trial would be far less significant than it turned out to be, and that the defendant relied upon counsel's opinion in deciding whether he should reject the State's plea offer and go to trial.

When testifying about what steps were taken to determine the defendant's potential sentencing exposure, defense counsel explained that he and the defendant conducted research and shared "various verdicts associated with cases similar to this and cases that are not as similar but similar." On cross-examination, defense counsel testified that his research did not include "actual court document cases, it was more press — things that were in the press." Despite those efforts, defense counsel did not locate the most comparable case to the defendant's — in which the same judge imposed a similar sentence in a case involving similar theft charges — and was unaware of the sentence imposed in that case as a result. Counsel testified that, had he been aware of the sentence in that case, he would have advised the defendant

4

to "strongly think about whether or not you want to take this case to trial, because the sentence could be a lot worse."

The trial court denied the defendant's motion for a new trial based on ineffective assistance of counsel, which requires a showing of: (1) constitutionally deficient representation by counsel; and (2) actual prejudice to the defendant. State v. Kepple, 155 N.H. 267, 269-70 (2007). With respect to the issues of the indictment and jury instructions relating to the sentence enhancement, the trial court ruled that the defendant failed to demonstrate prejudice. The court explained that, notwithstanding the sentence enhancement provision, the defendant's potential sentencing exposure for each of the five indictments was seven and one-half to 15 years, which equated to a total maximum sentencing exposure of 37 and one-half to 75 years. The court concluded that because the defendant's sentence of nine and one-half to 25 years fell squarely within the defendant's sentencing exposure without the sentence enhancement, the defendant had failed to establish that his counsel's conduct prejudiced the outcome of his case.

As for the claim that defense counsel was ineffective during the plea-bargaining process, the trial court noted that this court has not yet addressed how to analyze the prejudice prong of such a claim. Applying the framework developed by the Supreme Court of the United States in Lafler v. Cooper, 566 U.S. 156 (2016), the court explained that, to show prejudice in this context, the defendant must satisfy the court that a reasonable probability exists that, but for counsel's ineffectiveness: (1) the plea offer would have been presented to the court; (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the sentence that was imposed after trial.

The court assumed without deciding that the first and third prongs of the test were met, but ruled that the second prong was not because the "defendant offered no evidence of similar plea agreements in similar cases or any evidence to suggest that the court would have accepted the plea agreement." Therefore, the court denied the defendant's motion for a new trial. The defendant then filed a motion to reconsider, which was also denied, and this appeal followed.

II

The defendant asserts that his counsel was ineffective under the State and Federal Constitutions. Both Part I, Article 15 of the State Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution "guarantee a criminal defendant reasonably competent assistance of counsel." State v. Hall, 160 N.H. 581, 584 (2010) (quotation omitted). The ineffective assistance analysis is the same under both the State and Federal Constitutions. State v. Wisowaty, 137 N.H. 298, 301 (1993). We first address the defendant's claims

under the State Constitution, citing federal opinions for guidance only. <u>Hall</u>, 160 N.H. at 584.

To prevail upon a claim of ineffective assistance of counsel, the defendant must demonstrate, first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case. <u>State v. Collins</u>, 166 N.H. 210, 212 (2014). A failure to establish either prong requires a finding that counsel's performance was not constitutionally defective. <u>Id</u>. We have recognized that the preferable course in a challenge based on ineffective assistance of counsel is to require the defendant to prove, as a threshold matter, that the alleged error by counsel prejudiced his case. <u>Wisowaty</u>, 137 N.H. at 302. Courts, however, have the flexibility to adopt the analytic approach that promotes clarity and ease of review. <u>Id</u>.

To satisfy the first prong of the test, the performance prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness. <u>Collins</u>, 166 N.H. at 212. To meet this prong, the defendant must show that counsel made such egregious errors that he failed to function as the counsel that the State Constitution guarantees. <u>Id</u>. We judge the reasonableness of counsel's conduct based upon the facts and circumstances of the particular case, viewed from the time of the conduct at issue. <u>Hall</u>, 160 N.H. at 584. We afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. <u>Collins</u>, 166 N.H. at 212-13. The defendant must overcome the presumption that trial counsel reasonably adopted his trial strategy. <u>Id</u>. at 213. Accordingly, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. <u>Id</u>.

To satisfy the second prong, the prejudice prong, the defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id</u>. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id</u>. Not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984). On the other hand, a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. <u>Id</u>. In conducting the prejudice inquiry, we consider the totality of the evidence presented at trial. <u>Collins</u>, 166 N.H. at 213.

Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. <u>Id</u>. Therefore, we will not disturb

the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo.  Id.

We first address the defendant's argument that his counsel was ineffective for failing either to object to the trial court's jury instructions on the sentence enhancement contained in RSA 651:6 on the basis that it had not been presented to the grand jury for indictment, or to move for dismissal of the indictment on that same basis.

Whether a sentence enhancement must be alleged in an indictment is an open question under the State Constitution, see State v. Marshall, 162 N.H. 657, 665 (2011), and, therefore, whether counsel's conduct fell below an objective standard of reasonableness is unclear.  We need not decide this question, however, because we agree with the trial court that, even if counsel's performance was constitutionally deficient, the defendant has failed to show prejudice.  See Strickland, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

Even if counsel had objected to the trial court's jury instructions and the objection had been sustained, there is nothing in the record to indicate that the defendant would not have received the same or a similar sentence.  As the trial court correctly noted, the defendant's sentencing exposure without considering the sentence enhancement provision was anything up to 37 and one-half to 75 years, and the sentence that the defendant received of nine and one-half to 25 years is within that permissible range.  Similarly, as the State points out, even if defense counsel had successfully moved to dismiss the indictments for not including the sentence enhancement provision, the State could have simply re-indicted the defendant and included the sentence enhancement.  Thus, the defendant has failed to demonstrate a reasonable probability that, but for counsel's performance, the outcome of the proceeding would have been different.

We turn next to the defendant's argument that counsel was ineffective in advising the defendant as to the merits of the State's plea offer and the defendant's sentencing exposure at trial.  A defendant's right to reasonably competent assistance of counsel under the State and Federal Constitutions extends to the plea-bargaining stage of a proceeding.  Lafler, 566 U.S. at 162; Hall, 160 N.H. at 585.  Accordingly, the two-part Strickland test applies. Lafler, 566 U.S. at 162-63.  Thus, to prevail on his claim of ineffective assistance at the plea-bargaining stage, the defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant.  Strickland, 466 U.S. at 687.  The trial court did not address the first prong of the Strickland test because the court ruled that the defendant failed to demonstrate prejudice.  However, because the record is

7

sufficiently developed for us to address the first prong as a matter of law, and because the determination of whether each prong is met is a question that we review de novo, see Collins, 166 N.H. at 213, we choose to address prong one first to promote clarity and ease of review. See Wisowaty, 137 N.H. at 302.

The first prong requires the defendant to show that counsel's performance fell below an objective standard of reasonableness. Collins, 166 N.H. at 212. In the plea-bargaining context, prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings, and laws involved and then to offer his informed opinion as to what plea should be entered. Hall, 160 N.H. at 585. Counsel must not only communicate the terms of the plea offer to his client, but also the relative merits of the offer as compared to the client's chances for success at trial. Id. Reasonable professional conduct, however, does not, under all circumstances, require an attorney to provide an explicit opinion as to whether a client should accept a plea offer. Id.

The State argues that counsel's conduct in advising the defendant about the merits of the State's plea offer and his potential sentencing exposure at trial was reasonable because counsel told the defendant that he was exposed to an extended term and could get a "pretty severe" sentence if convicted at trial, counsel discussed the possibility of consecutive sentences with the defendant, and counsel researched sentences in cases similar to the defendant's. We disagree that counsel's conduct was objectively reasonable in this case.

Even if defense counsel made reference to the possibility of a severe sentence, counsel testified that he gave the defendant the impression that the sentence he might receive after trial would be significantly less than it actually was — likely three years or less. Counsel also testified that the defendant relied on counsel's opinion in deciding whether to accept the State's plea offer or go to trial. Indeed, the defendant's sentencing exposure at trial, including the sentence enhancement, was 150 years. Further, counsel testified that he did not recall, or have any documents in his file to indicate, that he discussed with the defendant the distinction between the Class A felonies with which he was charged and the sentence enhancement provision. That testimony, coupled with the defendant's e-mail following his conviction asking counsel to explain the "Elder Abuse (over 65 years old) charge," demonstrates that the defendant did not understand the nature or effect of the applicable sentence enhancement.

In sum, counsel did not adequately advise the defendant about the applicable sentence enhancement and the merits of the State's plea offer relative to the defendant's likelihood of success at trial. Therefore, we conclude that counsel's performance fell below an objective standard of reasonableness. See Byrd v. Skipper, 940 F.3d 248, 257 (6th Cir. 2019) (concluding that ignorance of the law applicable to the defendant's case coupled with the

8

inaccurate advice counsel gave his client about the likelihood of his success at trial was sufficient to deem counsel's performance constitutionally inadequate); Purdy v. U.S., 208 F.3d 40-41, 45 (2d Cir. 2000) (stating that "counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." (citation omitted)); cf. Strickland, 466 U.S. at 691 (stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

Next, we address prong two, the prejudice prong, of the Strickland test. This court has not yet addressed how to analyze the prejudice prong of an ineffective assistance claim where ineffective assistance results in the defendant's rejection of a plea offer. The Supreme Court, however, has addressed this issue. See Lafler, 566 U.S. at 163. Because the analysis for ineffective assistance claims is the same under the State and Federal Constitutions, see Wisowaty, 137 N.H. at 301, we today adopt the approach to this inquiry that was developed by the Supreme Court in Lafler.

"To establish Strickland prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, 566 U.S. at 163 (quotation omitted). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." Id. "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Id. at 168. "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Id.

When the prejudice alleged by the defendant is having to stand trial after rejecting a favorable plea offer as a result of counsel's deficient performance, a defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 163-64.

First, we consider whether there is a reasonable probability that, but for counsel's deficient performance, the defendant would have accepted the State's plea offer. See id. at 163. The record demonstrates that the defendant was seriously considering the State's plea offer at all times prior to trial. For example, when a plea agreement was not reached at the conclusion of the first

9

settlement conference, the parties entered into an agreement "[t]o continue the Settlement Conference . . . in order to allow the Defendant time to consider the State's current offer."  This agreement was approved by the trial court, which entered it as an order.  The parties also filed an assented-to motion, which the court granted, for "Continuance of Pretrial and Trial."  The motion states that the "parties engaged in productive settlement discussions" and "are in agreement that the defendant have some time to consider the State's current offer."  Additionally, in an e-mail response to the State's reiteration of the plea offer in question, defense counsel informed the State that the defendant "has not ruled out a plea including some incarceration, so it makes sense to return to the second day of the Settlement Conference regardless of your response [to the defendant's counteroffer]."

Moreover, but for counsel's deficient advice regarding the merits of the State's plea offer and the defendant's sentencing exposure, the defendant would have better understood that the two-year period of incarceration included in the plea offer was at the low end of his sentencing exposure at trial, and the defendant would have been more likely to accept the State's plea offer, which he was already considering.  Compare Gramiak v. Beasley, 820 S.E.2d 50, 56-57 (Ga. 2018) (stating that the significant difference between period of incarceration included in State's plea offer and defendant's sentencing exposure at trial could support an inference that the defendant would have accepted the plea offer); Com. v. Steckley, 128 A.3d 826, 833 (Pa. Super. Ct. 2015) (noting defendant's willingness to enter into plea agreement corroborated by counsel's testimony that she "strenuously" would have encouraged defendant to accept plea offer had she known extent of sentencing exposure), with People v. Hale, 996 N.E.2d 607, 617 (Ill. 2013) (concluding that defendant did not demonstrate reasonable probability that he would have accepted plea because the record showed he was willing to risk a thirty-year sentence at trial rather than plead guilty in exchange for a sentence of fifteen years).

The State argues that the evidence of the defendant's willingness to consider a plea agreement consists of nothing more than vague assertions that the defendant had not ruled out a plea agreement and needed more time to consider the State's offer, which, the State argues, "is far from indicating his acceptance."  However, the defendant is not required to establish that he would have accepted the plea.  Rather, the defendant is required to demonstrate a reasonable probability that, but for counsel's unprofessional errors, he would have accepted the plea.  See Lafler, 566 U.S. at 163 (emphasis added).  "The Strickland prejudice standard is not stringent — it is, in fact, less demanding than the preponderance standard."  Williams v. Beard, 637 F.3d 195, 227 (3d Cir. 2011) (quotation omitted); see Strickland, 466 U.S. at 693; see also Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (explaining that Strickland "specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered").  Given the evidence of the defendant's willingness to consider the State's plea offer in this case, and

10

counsel's errors in advising the defendant, we conclude that, but for counsel's deficient performance, there is a reasonable probability that the defendant would have accepted the plea offer.

Next, we consider whether the defendant has demonstrated that there is a reasonable probability that the State would not have withdrawn the plea offer in light of intervening circumstances. Lafler, 566 U.S. at 164; see Missouri v. Frye, 566 U.S. 134, 147 (2012) ("Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."); see also State v. Laforest, 140 N.H. 286, 290 (1995) ("In general, the State may withdraw a plea offer at any time before the defendant accepts the offer and has entered a guilty plea in reliance on it.").

In an e-mail from the State to defense counsel, the State said it would keep the plea offer open through the second day of the settlement conference. The record does not include, and the State does not allege, any intervening circumstances to indicate that the prosecution would have withdrawn the plea offer prior to the defendant's opportunity to accept it at the second settlement conference. Thus, we conclude that the defendant has demonstrated a reasonable probability that the State would not have withdrawn the plea offer. See Frye, 566 U.S. at 149-50 (stating that "it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal of a plea bargain" (ellipsis omitted)).

We turn next to whether the defendant has demonstrated a reasonable probability that the court would have accepted the terms of the plea agreement if it had been presented. Lafler, 566 U.S. at 164; see State v. Jeleniewski, 147 N.H. 462, 469 (2002) (stating that "a trial judge is vested with wide discretion when considering plea agreements and is free to reject an agreement"); N.H. R. Crim. P. 11(c)(1)-(2). In conducting this inquiry, we proceed on the assumption that "the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Strickland, 466 U.S. at 695. Our analysis does "not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." Id. "Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination." Id. The Supreme Court has stated that, in most instances, because prosecutors and judges in most jurisdictions are assumed to be familiar with the boundaries of acceptable plea bargains and sentences, "it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal

11

course, to cause judicial nonapproval of a plea bargain." Frye, 566 U.S. at 149 (ellipsis omitted).

The State argues that the defendant has not demonstrated a reasonable probability that the court would have accepted the plea agreement because, even if the plea had been presented to the court by the parties, that would not have given rise to anything more than a "hope" that the court would accept its terms. The State further argues that the record contains evidence that the trial court would not have accepted the terms of the plea agreement because the sentence imposed after trial was nearly five times greater than the sentence included in the State's plea offer, and the presiding judge structured the defendant's sentence similarly to a sentence that the judge had imposed previously in a similar case. We are not persuaded.

As the Supreme Court has explained, the prejudice inquiry under Strickland is an objective one that should not consider a particular judge's sentencing practices. Strickland, 466 U.S. at 695. Thus, the fact that the sentence imposed by the judge after the defendant was convicted at trial was structured similarly to the sentence imposed in a previous case by the same judge should not be considered in determining whether the court would have accepted a plea agreement that included a lesser sentence. Further, although courts are not required to accept a plea agreement, that discretion in no way heightens Strickland's prejudice standard, nor detracts from the prominence of resolving matters in our criminal justice system through plea agreements. The Supreme Court has acknowledged that the plea process today "is not some adjunct to the criminal justice system; it is the criminal justice system." Frye, 566 U.S. at 144. Indeed, "ninety-four percent of state convictions are the result of guilty pleas." Id. at 143.

Absent some intervening circumstance, or evidence in the record, to suggest that the court would have rejected the plea agreement in the normal course, we conclude that there is a reasonable probability that the court would have accepted the plea agreement if it had been presented. See Frye, 566 U.S. at 151 (stating that, in light of the defendant's new arrest for driving without a license, there is reason to doubt that the trial court would have accepted plea agreement); Rodriguez v. State, 470 S.W.3d 823, 829 (Tex. Crim. App. 2015) (determining that the court of appeals did not err in concluding that there was a reasonable probability that the trial court would have accepted the plea because nothing in the record indicated that the judge would have rejected the agreement); Woods v. State, 48 N.E.3d 374, 382-83 (Ind. Ct. App. 2015) (concluding that, without evidence to suggest otherwise, the trial court likely would have accepted the plea agreement because plea agreements are commonplace and conserve judicial resources); McMillion v. Commissioner of Correction, 97 A.3d 32, 40 (Conn. App. Ct. 2014) (stating that determination of prejudice must be made by assessing whether a reasonable trial judge would have accepted the plea).

With respect to the final prejudice inquiry, the State concedes, as it must, that the sentence the defendant would have received under the plea agreement offered by the State is less severe than the sentence he received at trial. Therefore, having satisfied the two-part Strickland test, the defendant has prevailed on his claim that counsel provided constitutionally ineffective assistance in advising the defendant at the plea-bargaining stage regarding his sentencing exposure at trial and the merits of the State's plea offer.

"Even if a defendant shows ineffective assistance of counsel has caused the rejection of a plea leading to a trial and a more severe sentence, there is the question of what constitutes an appropriate remedy." Lafler, 566 U.S. at 170. The remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Id. (quotation omitted). Thus, the remedy "must neutralize the taint of [the] constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." Id. (quotation and citation omitted).

In Lafler, the Supreme Court stated that the "injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms." Id. In some cases, typically when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial, "the sole advantage a defendant would have received under the plea is a lesser sentence." Id. at 170-71. "In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea." Id. at 171. "If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." Id.

In some cases, for example, where an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted at trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, resentencing alone may not provide full redress for the constitutional injury. Id. "In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal." Id. "Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." Id.

"In implementing a remedy in both of these situations, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here." Id. In Lafler, the Supreme Court provided two guiding considerations that the Court deemed to be of relevance: first, "a court may

13

take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions"; and second, it is not necessary here to decide as a constitutional rule that the court is required to disregard "any information concerning the crime that was discovered after the plea offer was made."[1]  Id. at 171-72.

The defendant has acknowledged that the case now before us presents the first of the two scenarios described above, and by the Supreme Court in Lafler, because the sole advantage the defendant would have received under the plea is a lesser sentence.  As a result, we pause to clarify our understanding of the Supreme Court's description of this situation.  The Court explained in Lafler that trial courts may exercise discretion in fashioning a remedy for a finding of ineffective assistance of counsel if the defendant has successfully demonstrated a reasonable probability, after an evidentiary hearing, that but for counsel's errors he would have accepted the plea.  See id. at 171.  We understand the Supreme Court's language to describe the discretion that may be exercised by the trial court after the defendant has demonstrated that he was prejudiced by counsel's deficient performance; we do not understand that language to require an evidentiary hearing at the remedy stage to probe an inquiry that was already addressed during the prejudice analysis.

If the court has already determined that the defendant was prejudiced, in part because it is reasonably probable that the defendant would have accepted the plea agreement, it is difficult to understand why the court should consider the same inquiry again, using the same standard, when it exercises its discretion in fashioning a remedy.  Cf. Ebron v. Commissioner of Correction, 53 A.3d 983, 991-92 (Conn. 2012) (questioning why the trial court, when fashioning an appropriate remedy, should be permitted to consider whether it is reasonably probable that the court would have accepted the plea, since that question was already decided in the prejudice analysis).  Indeed, reading Lafler in such a way runs significant risks of conflicting findings at the prejudice and remedy stages at worst, cf. id. at 992, and expending scarce judicial resources on redundant proceedings at best.  Further, when describing the second of the two scenarios, the Supreme Court did not include language about an evidentiary hearing or explain why a second evidentiary hearing might be required in the first set of circumstances but not the second.  See Lafler, 566 U.S. at 171.  Therefore, because we have already determined in our prejudice analysis that the defendant has demonstrated a reasonable probability that,

---

[1] The State erroneously relies on this language for the proposition that admissions made by the defendant at trial may be considered during the prejudice inquiry when determining whether there is a reasonable probability that the court would have accepted the plea agreement. However, this language appears in the discussion of a remedy for a finding of ineffective assistance of counsel, which is distinct from the prejudice inquiry, and nothing in Lafler suggests that the trial court may consider trial testimony in conducting the prejudice analysis.

but for counsel's deficient performance, the defendant would have accepted the plea agreement, the trial court need not hold an evidentiary hearing on remand to determine that question. Rather, in deciding the appropriate remedy, the court's inquiry should focus on whether the defendant should receive the term of imprisonment the State offered in the plea, the sentence he received at trial, or something in between. Id.

The proper remedy upon a finding of ineffective assistance of counsel is to remand to the trial court, "which is vested with the discretion to place the [defendant], as nearly as possible, in the position that he would have been in if there had been no violation of his right to counsel." H.P.T. v. Commissioner of Correction, 79 A.3d 54, 59 (Conn. 2013) (quotation omitted); cf. Lafler, 566 U.S. at 172. "The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial." Lafler, 566 U.S. at 172. As the Supreme Court did in Lafler, our decision today leaves open to the trial court how best to exercise that discretion in all the circumstances of the case before it. Id. at 174-75.

Finally, the State argues that the defendant cannot be resentenced on remand to the sentence he would have received under the plea agreement without committing perjury. The State contends that such a remedy would require the defendant to admit facts under oath during a plea colloquy that he has already denied under oath at trial. We disagree.

The State's argument is premised upon the remedy applicable to the second situation described in Lafler. See id. at 171. In those circumstances, where resentencing alone may not provide full redress for the constitutional injury, the trial court has the discretion to decide whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. Id. By contrast, the remedy applicable to the first scenario described in Lafler, and to the case now before us, does not give the trial court the discretion to vacate the conviction or accept the plea. Id. at 170-71. Rather, that remedy permits the court to exercise discretion in determining whether to resentence the defendant to either the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between. Id. at 171. Thus, no plea colloquy is necessary for application of the remedy, and the defendant is not at risk of committing perjury.

Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, we reach the same result under the Federal Constitution as we do under the State Constitution. Hall, 160 N.H. at 588. Accordingly, we affirm

15

the trial court's order in part, reverse in part, and remand for resentencing consistent with this opinion.[2]

Affirmed in part; reversed in part; and remanded.

DONOVAN, J., concurred; NADEAU, C.J., superior court justice, specially assigned under RSA 490:3, concurred.

---

[2] In light of our decision, the defendant's motion to supplement appendix is moot.